MANUEL LINCH *vs.* SAGAMORE MANUFACTURING COMPANY.

Bristol.    Oct. 29, 1886. — Jan. 5, 1887.    DEVENS & W. ALLEN, JJ., absent.

If a person who is employed as a fireman in a mill, where there are several boilers connected with a main steam-pipe by means of smaller pipes, each of which has a valve directly over the boiler, but no drip-cock, and whose duty it is to start the steam in the boilers in the morning, and who knows that it is dangerous to let on the steam when there is water in the pipes, is injured while letting on the steam, having the danger in mind, by the bursting of a valve in which there is no defect and the escaping of steam, it is an injury arising from the risks of his employment, and he cannot maintain an action against the mill-owner therefor.

TORT for personal injuries sustained by the plaintiff while in the employ of the defendant. Trial in the Superior Court, before *Thompson,* J., who reported the case for the determination of this court, in substance as follows :

The plaintiff testified that he had worked as a fireman, in the defendant's mills and in other mills, some five or six years prior to the accident; that, about a year or less before the accident, he went to work for the defendant corporation in its No. 2 mill, wheeling coal for a little while, and then as night fireman; that he worked awhile as night fireman, and then quit a little while before the accident, and went to work as day fireman; that, while he was working as day fireman, there was occasion to make repairs upon the boilers, and to employ a boiler-man therefor, and the superintendent of the mills told the plaintiff to go with the man who was repairing the boilers and do as he wanted him to do; that there were ten boilers in all, eight on one side of the boiler-room and two on the other; that six of the eight had been repaired and something had been done to one of the other two, but that the eighth one had not been repaired; that the superintendent came to the plaintiff about the middle of the forenoon, and told him he wanted him to get up steam in the eighth boiler; that at noon all the hands, including the boiler-man aforesaid, went to dinner, and the plaintiff remained; that, on the return of the boiler-man from dinner, he asked the plaintiff if the latter had connected the eighth boiler (meaning if he had turned on steam so as to ·connect it with the engine and other boilers), and the plaintiff said he had not; that thereupon the boiler-man asked the plaintiff how high the steam was in the eighth boiler, and he said fifty pounds, and how high in the other boilers, and he said eighty pounds; that the man said, "All ready, you go up and connect," and the plaintiff went up on top of the boiler to make the connection; that he began to open the valve slowly; that the man called out to him that he was never going to open the valve, and asked what was the matter, and if he was afraid to open it, and the plaintiff told him he was opening some; and that he opened it about a quarter of a turn as slowly as he could, and then the valve burst, and the water came over him with steam, and caused the injuries complained of.

It appeared that each of the eight boilers was connected with a large main pipe, called the drum, by means of a smaller pipe which went up from the top of the boiler, and, turning, ran along a short distance above the boiler to a point just below the drum,

where it turned up about a foot and a half and entered the drum. In the end of the drum next to the engine-room was a drip-cock, but there were no drip-cocks in the pipes entering the drum from the boilers. In each of the pipes connecting the boilers with the drum was a valve at the first turn made by the pipes after leaving the boilers, and close to and directly over the boilers. These valves were for the purpose of turning on and shutting off the steam from the boilers to and from the drum and engine, and it was the valve on top of the eighth boiler which the plaintiff was opening when injured, and there was not room between the boilers and the roof for him to stand up straight when opening the valve.

The plaintiff further testified that, as night fireman, it was his duty on Saturday night to shut off the steam from all the boilers, except one or two in which steam was kept up during Sunday; that on Sunday night he would get up steam in the other boilers, and on Monday morning he would connect all the boilers with each other, and with the drum and engine, so as to have the mill all ready to start up; that the boilers were connected and disconnected by means of the valves aforesaid; that, as day fireman, it was his duty to keep up steam, look after the pumps, and see that the mill was kept going; that he knew that there were no drips on the pipes at the Sagamore Mill No. 2 where he was working when hurt; that at Sagamore Mill No. 1, where he had worked previously as fireman, there were drips on all the connecting pipes, otherwise the boilers were the same; that in the Border City Mills, where he had also worked previously as fireman, there were drips in the drum, otherwise everything was the same as in Sagamore Mill No. 2, except that the drum was in front instead of in the rear of the boilers; that at the Border City Mills there were eight sections of three boilers each, and each section was connected with the drum by one pipe having a valve to turn on and shut off the steam, the same as in Sagamore Mill No. 2, which the plaintiff, in his business as fireman, had been required to open and shut in letting on and shutting off the steam, for the sixteen or seventeen months while there, every Sunday or Monday; and that at Sagamore Mill No. 1 the plaintiff performed about the same duties as at the other two mills.

Upon cross-examination, the plaintiff testified that on Saturday night he shut off the steam from all the boilers except those that were to be run on Sunday; that when he got ready to connect them on Monday morning, there being no drips on the pipes, he shut the steam off first from the boiler that was going, then opened the drip in the main steam-pipe, then the valves in the top of the boilers, and then the valves on the steam-pipes from the boilers to the main pipe, so as to let the water run back into the boiler; that he left the valves open on the other boilers, and then went back to the Sunday boilers and connected them again, before he raised any steam; that he knew there were no drips on those pipes; that he connected the boilers and the main pipe on Monday morning in the manner described, because the pipes were all full of water and he could not get it out; that he was afraid to raise steam with water in the pipes, there being no drips there, he was afraid something would burst; that he knew, if there was water in the pipes, he must get the water out before he let the steam in; that he knew the valve should be opened slowly to let the steam on; that he was opening it as slowly as he could at the time of the accident, and did not open it any faster on account of what the boiler-man said to him.

It was not contended that there was any defect in the valve, nor any in the pipe except the want of a drip.

The plaintiff offered to show that the construction of the connecting pipes without drips was not safe for the purpose for which they were used; and contended that the accident was caused by the failure of the defendant to furnish drips at the elbows of the smaller pipes to let such water as might collect therein escape before turning on steam; and that it was a question of fact, upon all the evidence, whether the plaintiff knew, at the time of the accident, the danger to which he was exposed.

The defendant asked the judge to rule that the plaintiff could not recover, and to direct a verdict for the defendant. The judge so ruled, and directed a verdict accordingly. If the ruling was right, judgment was to be entered on the verdict; otherwise, the verdict to be set aside, and a new trial ordered.

*J. W. Cummings*, for the plaintiff.

*J. M. Morton*, (*A. J. Jennings* with him) for the defendant.

C. ALLEN, J. This case falls within the rule, that, where a servant, knowing and appreciating the danger, enters upon a perilous work, even though he does so unwillingly and by order of his superior officer, he must bear the risk. *Russell* v. *Tillotson,* 140 Mass. 201. *Taylor* v. *Carew Manuf. Co.* 140 Mass. 150. *Leary* v. *Boston & Albany Railroad,* 139 Mass. 580. The plaintiff knew the danger from letting on the steam when water was in the pipes. He had this in mind at the time, and that water might be in the pipe. He acted with reference to this knowledge, and let the steam on slowly, because he knew there was danger. He understood the situation. Nobody could have given him any information. The very thing happened which he had in mind, and feared. In such case, he must be held to take the risk. It is urged that he did not know that there was water in the pipe. But he knew that it was likely to be there, and acted with reference to this contingency.

*Judgment on the verdict.*