## ROCCIA v. BLACK DIAMOND COAL MIN. CO.

### (Circuit Court of Appeals, Ninth Circuit. March 2, 1903.)

### No. 795.

1. INJURIES TO MINER—OBVIOUS DANGERS—ASSUMPTION OF RISK—INSTRUCTIONS.
   In an action by an experienced coal miner, who was employed to timber the mine and look out for and remedy dangers from caving, for injuries sustained by falling coal and dirt, where it was shown that he had discovered the dangerous situation and continued to work there after he had requested and been promised assistance, an instruction that, if the dangers and defects were so obvious and threatening that a reasonably prudent man would have avoided them, plaintiff was guilty of contributory negligence and assumed the risk of injury, was proper.

2. SAME—FAILURE TO CHARGE—RIGHT TO ALLEGE ERROR.
   It was not error of which plaintiff could complain for the court to fail to charge at plaintiff's request that if the jury found that the danger, while not so threatening and obvious as likely to cause injury at any moment, was so imminent and manifest as to prevent a reasonably prudent man from risking it on a promise of assistance, defendant would not be liable.
   Ross, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

Governor Teats, for plaintiff in error.

Struve, Allen, Hughes & McMicken, for defendant in error.

Before GILBERT, MORROW, and ROSS, Circuit Judges.

GILBERT, Circuit Judge, with whom concurred MORROW, Circuit Judge. The court below, in charging the jury on the subject of the dangers and defects in the mine, and the assumption of risk by the workmen therein, remarked: "The dangers and the defects must be so obvious and threatening that a reasonably prudent man would have avoided them, in order to charge the workman with contributory negligence or the assumption of the risk." But it is contended that,

¶ 1. See Master and Servant, vol. 34, Cent. Dig. §§ 645, 686.

while this instruction correctly states the law applicable to the general subject of the assumption of risk by the workman, it was not given to the jury with reference to the precise situation in which, according to the evidence, the plaintiff in error was placed just prior to the accident, when he had discovered the dangerous situation of the place where he was injured, and had sent for and received the promise of assistance; and it is contended that the instruction which was in fact given with reference to the situation while the plaintiff in error was proceeding with the work in the expectation of promised assistance was error, for the reason that the court failed, in that connection, to submit to the jury the question whether a reasonably prudent man would have remained at the work under the circumstances.

. In the case of District of Columbia v. McElligott, 117 U. S. 622, 6 Sup. Ct. 884, 29 L. Ed. 946, the Supreme Court has expressed the doctrine which, in our judgment, sustains the instructions given to the jury by the court below.   In that case the plaintiff, who was in the employ of the District, was injured while at work on a bank of gravel. There was evidence tending to prove that he discovered that there was danger of the bank caving in, and sent to the supervisor of the District for more men to do the work, and for one man to watch the bank, and that he received the information that such assistance would be sent. Before the assistance arrived the bank caved in, causing his injury. The court said:

"Assuming that the District might be responsible under some circumstances for injuries resulting from the negligence of its supervisor, it certainly would not be liable if the danger which the plaintiff apprehended from the beginning was so imminent or manifest as to prevent a reasonably prudent man from risking it upon a promise or assurance by the proper authority that the cause from which the peril arose would be removed."

The court then, after referring to the experience which the plaintiff had had in that kind of business, said:

"And it was not implied in the contract between him and the District that he might needlessly or rashly expose himself to danger. On the contrary, if liability might come upon the District for the negligence of its officers controlling his services, he was under an obligation to exercise due care in protecting himself from personal harm while discharging duties out of which such liability might arise. If he failed to exercise such care; if he exposed himself to dangers that were so threatening or obvious as likely to cause injury at any moment—he would, notwithstanding any promises or assurances of the District supervisor of the character alleged, be guilty of such contributory negligence as would defeat his claim for injuries so received."

Here are expressed the extent and limit of the rules which control the questions now under consideration.   First, if the workman expose himself to dangers that are so threatening or obvious as likely to cause injury at any moment, he is, notwithstanding any promise of his employer, guilty of contributory negligence if he remain at the work. In other words, he assumes the risk of the danger which he knows and appreciates, and, if the danger be so obvious or threatening as likely to cause injury at any moment, he has no right to continue at such work in the expectation that promised assistance will be sent.   This principle of law the decision formulates without qualification, and irrespective of what a reasonably prudent man would or would not have

done under the circumstances. The opinion elsewhere goes further to say, in substance, that if the danger be not obviously threatening of present injury, but yet if it be so imminent or manifest as to prevent a reasonably prudent man from assuming it, even with the promise of assistance, the master will not be liable.

Now, the court in the present case charged in substantial compliance with the first of these rules, and informed the jury that the plaintiff in error must be deemed to have assumed the extra hazard of the dangers which he knew or believed to be imminent, and that the defendant in error would not be liable for an accident resulting in his injury from a danger which he himself believed was imminent, and to which he voluntarily exposed himself, unless that danger was enhanced by the failure on the part of the foreman to keep his promise to send materials and men to his assistance promptly. There can be no doubt of the correctness of that charge as given. It is true that the court might properly have proceeded further, and might have instructed the jury that if they found that the danger, while not so threatening and obvious as likely to cause injury at any moment, was nevertheless so imminent and manifest as to prevent a reasonably prudent man from risking it on the promise of assistance, the defendant would not be liable. Such an instruction might have been requested by the defendant in error, and its defense to the action might have been aided thereby. But the fact that it was not given at the request of the plaintiff in error was not error of which he can complain. The jury must have understood from the charge that, if they found that the dangers were not so obvious or threatening as likely to cause injury at any moment, the defendant in error would be liable. The jury brought a verdict against the plaintiff in error, evidently upon their belief that the dangers were so obvious or threatening as likely to cause injury at any moment, and that he knew and understood the peril of remaining at work while awaiting the promised assistance. If, indeed, the danger was such, and he had knowledge of his danger, there was no occasion for the jury to inquire further. The obvious danger was his warning, and the general rule applied to his case, that a workman assumes the dangers which are obvious to him. It is only where the dangers are of a character that is not obviously threatening, that it becomes necessary to inquire what a reasonably prudent man would have done, and to refer to a general standard by which the conduct of the workman, as of all workmen in like circumstances, should be governed. The charge as given to the jury was more favorable to the plaintiff in error than it would have been with the requested addition. It permitted the jury to return a verdict for the plaintiff in error, if they found the facts otherwise than as recited in the charge. The wisdom and the justice of the rule as laid down by the Supreme Court, and as followed by the trial court, is illustrated by the facts of the present case. Plaintiff in error was an experienced miner, and had been for years at work in the mine. It was his special duty to timber the mine and to look out for and remedy the very dangers which caused his injury. No one in the mine knew so well as he the perils to which in this particular occupation he was exposed. This is not a

case where an employé, unaware of the perilous nature of his employment, remains at work under a request for or promise of assistance of the master, nor is it the case of one who was under disability or was incapable of estimating the danger. The dangers were such as in his regular employment it was his duty to deal with. They were confessedly visible and obvious to him. They were the natural result of the progress of the work of mining. The defendant in error received its knowledge and information of these dangers from the plaintiff in error. The court in this connection properly instructed the jury that, "when it is necessary, in order to remedy a condition of insecurity, the employer has the right to contract with men to go and do what is necessary, and the men who with knowledge of the peculiar danger accept the employment are to be considered as having assumed the extra risks." Upon what theory of the law should the defendant in error be held liable, when it was true, as the jury must have found, that the injury to the plaintiff in error resulted from "an accident which he himself believed was imminent," and that he "assumed the extra hazard" of the dangers which "he knew and believed to be imminent"?

In Showalter v. Fairbanks, Morse & Co. (Wis.) 60 N. W. 257, the superintendent had assured an employé that there was no danger, and had told him to return to his work. The court held that the employé was not relieved of the assumption of risk. The court said:

"Upon these facts we are clearly of opinion that the plaintiff must be held to have assumed the risk. He was of ordinary intelligence. He knew that trenches of this depth were liable to cave in. He knew that this very trench had just partially caved in at a distance of a few feet. He came out of the ditch because of that very fact. He knew all the facts which the superintendent knew, and had fully as much experience as the superintendent. No expert engineer could have given him any additional information as to the probability of the ditch caving in. In fact, he was fully informed of the peril, and chose to continue his work. No principle is better established than that under such circumstances the risk is assumed. Naylor v. Railway Co., 53 Wis. 661, 11 N. W. 24; Johnson v. Water Co., 77 Wis. 51, 45 N. W. 807; Paule v. Mining Co., 80 Wis. 350, 50 N. W. 189. But it is said that the assurance of safety given by the superintendent, and the command to return to work, relieve the plaintiff of the consequences of his assumption of the risk. This is not the case where the employé is of full age and capacity, and knows the danger as fully as the superintendent. Toomey v. Steel Works (Mich.) 50 N. W. 850; Linch v. Manufacturing Co., 143 Mass. 206, 9 N. E. 728; Kean v. Rolling Mills (Mich.) 33 N. W. 395, 11 Am. St. Rep. 492; Bradshaw's Adm'r v. Railway Co. (Ky.) 21 S. W. 346. Plaintiff had the right to refuse to obey the order, and if he chose to obey he took the risk, of which he had full knowledge."

The judgment of the Circuit Court will be affirmed.

ROSS, Circuit Judge (dissenting). The plaintiff in error was plaintiff in the court below in an action for damages resulting from personal injuries received by him while at work in the defendant's coal mine at Black Diamond, King county, Wash. The complaint states that the main body of the coal constituting the mine consists of a coal vein of 61 inches, covered with 14 inches of shale and 3 inches of bone, on top of which bone and shale is deposited a vein of coal having streaks of bone of various thickness through it; that the vein of coal

and bone above the main vein is of a poor quality, and is so gaseous that the coal therein cannot be mined; that the defendant company well knew of the large quantities of gas contained in such upper vein of coal and bone, but that the plaintiff was ignorant thereof; that the mine is worked by what is known as the breast system, that is to say, "breasts are mined up from the gangways into the vein of coal toward the upper gangway, and said breasts are from 24 to 30 feet in width, and during the mining of the same the breasts are timbered by collars and posts." It is alleged that during the three weeks before and on the day of the plaintiff's injury, which was February 21, 1900, the plaintiff was at work under the supervision of the pit boss, D. B. Davis, in breasts 25, 27, and 28 of the sixth level, engaged in timbering the same; that those breasts are next to and in a fault in the vein, of which fact the defendant was aware, breast No. 28 being against the rock formation in the portion of the separated vein; that in driving the breasts mentioned the roof thereof indicated that it would be liable to crumble and fall, which weakness and unsafe condition was noticed by the plaintiff, who "repeatedly asked of the said defendant, through its said pit boss, Davis, for more men and better timbers, so as to timber the same so that the same would be safe from caving in; that the said defendant did not furnish more men and more timber, and did not properly timber the same and prevent the same from caving in." It is alleged that on the 21st day of February, 1900, while the plaintiff was at work in breast 28, he noticed that the indication of caving was more prominent than before, and, thinking that the same was unsafe, went to the pit boss, and complained that the breast was unsafe, and required better and more timbers, and more men to protect it; that the pit boss then requested the plaintiff to return to his place of work, promising to send him more men and more timbers with which to properly timber the said breast, and that the plaintiff, "believing and thinking that the danger from the lack of the said timber and the timbering, and the lack of men to place the same in the breast, was not so imminent and immediate but what he could return to his work for a reasonable length of time without danger to himself, and not knowing of the gaseous condition of the coal above the said vein they were then mining, went back to his place of work, and under said assurances and with his lack of knowledge of the conditions, and proceeded to work as requested by the defendant, and worked for a period of an hour and a quarter, when the roof of breast number 25 caved in, bringing down with it large volumes of gas from the broken up coal above the said roof, as herein described, and the current of air, then being in the direction of the plaintiff from said breast number 25, brought the gas down and dissolved the same in the air to an explosive point, and down upon the open lamp of the said plaintiff, causing a terrific explosion, killing one man and burning and mutilating the plaintiff" in a terrible manner. It is alleged that the mine was worked by the miners with open lamps, under the instructions of the defendant company, and that the plaintiff was so working at the time of the accident; that the defendant "well knew that in case of a cave-in the gas would come down upon the said lamp, and cause an explosion, but

plaintiff did not know these things, as he was ignorant of the scientific proposition herein set out as to the gaseous condition of the vein above, and the liability of the gas coming into the working place in case of a cave-in"; that the defendant did not inspect the working places, and did not inspect breasts 25, 27, and 28, for the purpose of seeing the defects of the timber or the liability of a cave-in, but carelessly and negligently and wantonly allowed the conditions to exist without inspection or attempting to remedy the same; that the defendant was fully warned of the impending danger, notwithstanding which it negligently allowed the plaintiff to remain in his place of work, without furnishing the men and timbers promised, and without any warning of the impending dangers.

In its answer the defendant put in issue all of the averments of negligence on its part, and as an affirmative defense alleged that the roof of the mine was of strong and firm rock formation, of a uniform width of 12 to 14 feet; that abundance of suitable timber was furnished and used in supporting all the gangways and roofs of the different breasts as the same were being mined; that after the coal had been removed no further support was given to the roof of the breasts except along the passageways; that the mine had at all times been free from gas, and had at all times been operated with open lamps, though the company furnished abundance of properly covered miners' lamps, which were at all times placed at the disposal of all the operatives, including the plaintiff in error; that the mine was at all times properly ventilated and regularly and frequently inspected; that the management and superintendency of the mine was under skilled and experienced men; that plaintiff in error had been for many years engaged in mine work, and for four years had been employed in this mine, and at the time of the accident and for the two years prior thereto had been the boss timberman of the mine, whose duty it was to timber and support the roof of the mine along the gangways and other places so as to render the same secure for himself and the other operatives; that with the assistance of the men under him he had placed all the timbers along the passageways and different breasts at the place of and in the vicinity of the accident, and that the quantity and extent of the timbering was left to his judgment; that the mine had been carefully inspected on the morning of the day of the accident, and found free from gas and in every way secure before the operatives had entered it; that a hundred feet or more from where the plaintiff in error was at the time employed, and in a breast which had been mined out, from an unknown and undiscovered cause, the roof caved in, accompanied by an escape of gas, which passed to where the plaintiff in error was at work, and was exploded by his open lamp; and that the explosion was entirely accidental, and could not have been anticipated or prevented by the defendant in error, and that the hazard was an incident to the employment.

The testimony shows that the plaintiff had not only worked in this mine for four years, but for about two years immediately preceding his injury had been its head timberman, whose duty it was, subject to the supervision and direction of the mine foreman, to so timber the breasts, roofs, etc., as to make them safe. His own testimony

shows that when his attention was called on the morning of the accident to the tendency of the roof, in breasts 25, 27, and 28, to squeeze and cave, he recognized the peril to which he would be exposed in working at the place where he was injured. His testimony tends to show that upon making that discovery he went to the foreman, and told him of the danger, and also informed him that there was a lack of men and of timber with which to keep those breasts from caving, and that to make them safe it was necessary for him to have more men and more timber; that thereupon the foreman promised to send the plaintiff more men and more timber for that purpose, and requested the plaintiff to return to his working place in breast No. 28, which the plaintiff at once did, and proceeded to work as requested by the foreman, relying upon his promise to send him more men and more timber. Based upon that and similar testimony, the plaintiff requested the court below to give to the jury this instruction:

"I instruct you that if you should find that there was not a sufficient number of men furnished to properly timber breasts 25–7–8, and keep the same from caving in, and that the plaintiff reported these facts to the mine foreman, and the mine foreman promised the plaintiff that he would send more men to properly timber the said breasts, and upon this promise the plaintiff returned to his place of work in breast 28; and if you should find further that the dangers from caving in or otherwise, known and apparent to the plaintiff, were not so imminent that a reasonably prudent and careful man would not return to his place of work; and you should find that after the plaintiff has (had) returned to his place of work and within a reasonable time which the defendant promised he would send men, and plaintiff was not furnished a sufficient number of men to properly protect the roof from caving, a cave occurred and the injury suffered by plaintiff—you will find for the plaintiff."

While this instruction is somewhat confused and inaptly expressed, it is quite manifest that what the plaintiff asked the court to instruct the jury as the law was that, if the danger impending his return to work was not so imminent or manifest as to prevent a reasonably prudent man from risking it upon the promise by the foreman to send the required men and timber, the plaintiff's return to work, and his injury while awaiting, for a reasonable time, the fulfillment of the unfulfilled promise of the foreman, entitled the plaintiff to a verdict for damages sustained. The court below refused the instruction requested by the plaintiff, and upon the point indicated specifically instructed the jury as follows:

"That the plaintiff would have the right to trust the foreman to carry out his promise in good faith to furnish him timber and furnish him sufficient men promptly to remedy the defect and to make the mine safe, and upon relying upon that promise, and with the knowledge which he himself had communicated to the foreman, the plaintiff, by going back to his place of work voluntarily, would be assuming the extra hazard of the dangers which existed in his own mind—that is, dangers which in his own mind he knew or believed to be imminent—and the defendant would not be liable for an accident resulting in his injury from a danger which he himself believed was imminent, and which he voluntarily exposed himself to, unless that danger was enhanced by a failure on the part of the foreman to keep his promise to send materials and men to his assistance promptly. You will take this, however, in connection with another instruction I will give you, that if the plaintiff went to his place of work voluntarily, and after going back to work there was a change occurred in the condition of the mine by

gas coming out which he did not know of, that there would be a duty on the part of the defendant company to communicate any knowledge which came to its managing officers, or the superintendent or the foreman at work near there, or whoever was charged with the inspection of the mine, to communicate the knowledge immediately, or as soon as it could be, to the plaintiff. The duty of furnishing material and additional help, and of furnishing intelligence of the plaintiff in the situation in which he claims he was placed, carries with it a right to have time and opportunity to perform that duty, and the defendant would not be chargeable for any wrong in the matter, if it failed to furnish materials or men, to give information instantly. It would only be chargeable for the failure to do those things promptly, and that means as quick as men of prudence and having due regard for the safety of others could act. Though you should find that the plaintiff gave notice to the foreman that the roof of the mine in the airway at breast 25, 27, and 28 leading to breast No. 28 was not safe and liable to fall, owing to the insufficient timbering, the defendant would not be liable for not strengthening and not adequately supporting the roof until it had reasonable time and opportunity to do so; and if you believe, before such reasonable opportunity had been afforded to the defendant, the plaintiff voluntarily went back into the mine and exposed himself to the dangers resulting from the roof giving way, which he knew or supposed to be imminent, he cannot recover because he voluntarily assumed the hazard; and this would more particularly be the case if you find from the evidence that the plaintiff was the head timberman in that part of the mine where that accident occurred, concerning which he gave notice, and that it was a part of the plaintiff's employment to place timbers and keep them in proper position."

I do not understand, as is contended by the learned counsel for the defendant in error, that the court there instructed the jury that the dangers must have been so obvious and threatening that a reasonably prudent man would have avoided them before the plaintiff in error could be properly charged with contributory negligence or the assumption of risk. It is true that the court in one part of its lengthy charge told the jury that "the dangers and defects in the mine, that to the eye of the operator or foreman and superintendent portend unnecessary and unreasonable risks and great danger, may have no such significance to the laborer or miner, who has not the knowledge or experience which the operator must have in the operation of his mine, unless a reasonably intelligent and prudent man would, under the circumstances, have known and apprehended the risk which certain conditions indicated; the dangers and the defects must be so obvious and threatening that a reasonably prudent man would have avoided them, in order to charge the workman with contributory negligence or the assumption of the risk;" and also instructed the jury that "the plaintiff, in accepting employment from the Black Diamond Coal Mining Company, and proceeding to work, was not compelled to know or investigate its modes of business or methods of operating its mines, and did not assume any of the risks or dangers resulting from the methods of mining used by the defendant, save and except such risks and dangers which were obvious and apparent, and the perils of which were apparent to the mind and understanding of a reasonably prudent man in his position." But the instruction of the court herein first quoted was, as stated by the court, specifically given to meet the contention on the part of the plaintiff that the mine foreman had been by the plaintiff informed of the impending danger, and of the necessity for more men and more timbers with which to make the place where the accident oc-

curred safe, and that the plaintiff returned to work at the place of the accident at the request of the foreman, and upon his promise to send him the required men and timbers.

Without reference to what a reasonably prudent man would have done situated as the plaintiff in error was, the specific instructions of the court given in respect to that contention were, in one place, to the effect that the plaintiff, in voluntarily going back to his place of work with the knowledge which he himself had communicated to the foreman, and relying upon the latter's promise to furnish the required men and timbers, assumed "the extra hazard of the dangers which existed in his own mind—that is, dangers which in his own mind he knew or believed to be imminent—and the defendant would not be liable for an accident resulting in his injury from a danger which he himself believed was imminent, and which he voluntarily exposed himself to, unless that danger was enhanced by a failure on the part of the foreman to keep his promise to send materials and men to his assistance promptly"; and, again, that if they found that, before a reasonable opportunity had been afforded the defendant to adequately support the roof, "the plaintiff voluntarily went back into the mine, and exposed himself to the dangers resulting from the roof giving way, which he knew or supposed to be imminent, he cannot recover because he voluntarily assumed the hazard."

These specific instructions, given, as has been said, with reference to the contention of the plaintiff in respect to the principal point in the case, not only omitted any and all reference to the question whether the danger was so imminent that a reasonably prudent man, situated as the plaintiff in error was, would or would not have returned to work upon the promise of the foreman, and remain at it for a reasonable length of time, awaiting fulfillment of that promise, but were, as above shown, to the effect that the defendant would not be liable if the plaintiff himself voluntarily exposed himself to a danger that he himself believed was imminent, unless that danger was enhanced by a failure on the part of the foreman to keep his promise to send materials and men to his assistance promptly; and again, omitting the latter qualification, that the defendant would not be liable if the plaintiff voluntarily went back into the mine and exposed himself to the dangers resulting from the roof giving way, which he knew or supposed to be imminent. The rule of law applicable to such a case is, in my opinion, that, if the danger is not so imminent or manifest as to prevent a reasonably prudent man from risking it, upon a promise by the proper authority to provide for the removal of the cause from which the peril arose, an exposure to such danger for a reasonable time, and a consequent injury during that time, while awaiting the fulfillment of the promise, cannot defeat a recovery for the injury. Hough v. Railway Co., 100 U. S. 224, 25 L. Ed. 612; District of Columbia v. McElligott, 117 U. S. 621, 6 Sup. Ct. 884, 29 L. Ed. 946.

I am of the opinion that the specific instructions above noticed were erroneous, and were also inconsistent with the general portions of the charge of the court also set out herein. The judgment should therefore be reversed, and the cause remanded for a new trial.