## Music's Administrator v. Northeast Coal Company.

(Decided December 4, 1914.) .

### Appeal from Johnson Circuit Court.

Master and Servant—Injury to Servant—When Master Not Liable. —The master is not liable for an injury to the servant brought about by a defect created by the servant in the progress of the work; and there can be no recovery for the death of a miner caused by a fall of slate which occurred by reason of a change of conditions made by him and his "buddy," or partner in the work.

JOHN W. WHEELER and C. B. WHEELER for appellant.

H. S. HOWES and HAGER & STEWART for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Charlie Music, who was in the employ of the Northeast Coal Company, was killed by a fall of slate in the mine, and this action was brought by his administrator against the coal company to recover for his death. The facts of the case, as shown by the proof on the trial, were, in brief, these: Music worked with a miner named Scott Daniels as his buddy or partner getting out coal. Daniels had been working as a miner for twenty-odd years. Music had been working in the mine for something over a year. He said, when he came to be employed, that he was over twenty-one years of age, and his appearance so indicated. His father testified that he was a little less than twenty years of age at the time of his death.

He and Daniels, prior to January first, had been working in another room of the mine, but Daniels did not work for some days before Christmas, on account of a death in his family, and the mine boss, thinking that they had quit, gave this room to others. When they returned, about January first, he assigned them to another room. The coal in this room was only about three feet thick, and to use the cars in the room, the slate over the car track had to be blown down so as to make the space high enough for the cars. The room also dipped downward from the entry, and this made it more difficult to push the cars out. They demurred to taking the room for these reasons, but the boss agreeing to pay them more than the usual price for the coal, and also to pay them .

for blowing down the slate, they went to work in the room, and worked there until Music was killed on February 11th. On the preceding Friday, when they left the mine, they gave notice that they needed some props, but they did not come back to work on Saturday, and so the props were not taken in. On Monday and Tuesday the mine was shut down. On Wednesday morning about six o'clock they came back to work, and finding that the props had not been taken in, again asked that they should be sent in. They went on to the room, and about eight o'clock the props came. They then set four props on one side of the car track and six on the other side.

The machine man had cut under the coal, and when they got the props set, Daniels sounded the roof with his pick, and finding it sounded all right, they got their drill and bored in holes for blasts to blow down the coal. The machine cut under about five feet, and they put in the blast so as to blow down the coal that had been cut under. They then set off the blasts and blew down the coal for the space of about five feet. About noon, after the smoke of the blast had cleared away, they went into the room to load up the coal which had been blown down, and while they were engaged in this work a piece of slate, about six feet in width and considerably longer than it was wide, fell from the roof, mashing Music so that he died. The slate, so falling, started at the edge of the coal bank, and extended out somewhat beyond the line of the bank as it stood before they made the blast when Daniels had sounded it with his pick; in other words, this slate was held up by the coal which they blew down, and could not have fallen until they blew the coal down; after they blew the coal down, they went to work loading it up without making any examination of the roof or taking any precaution to secure it. On these facts, the circuit court instructed the jury to find for the defendant, and, the plaintiff's petition having been dismissed, he appeals.

The rule requiring the master to use ordinary care to furnish a reasonably safe place of work is subject to the exception that the servant assumes risks resulting from the changes made in the place of work by him in the ordinary progress of the work. Smith's Administrator v. North Jellico Coal Co., 131 Ky., 195; Wright v. Cumberland Tel. Co., 137 Ky., 303; Williams Coal Co. v. Cooper, 138 Ky., 295; Proctor Coal Co. v. Beaver, 151 Ky., 839; Wallsend Coal Co. v. Shields, 159 Ky., 644.

The fall of the slate in question was caused by the

act of Daniels and Music, who were fellow-laborers, in blowing down the coal which supported the slate until it was blown down. The danger was created by them in the progress of the work. The props requested by them had been brought in more than four hours before the accident, and a number of these props were there in the room and had not been used. Under the custom of the mine, it was the duty of the miners to set props as it was necessary and to examine the roof when they blew down the coal.

It is insisted that Music was young and inexperienced and that he was not properly warned of the danger attending the work, but we do not find in the evidence anything to take the case to the jury on these grounds. While under his father's evidence, he was not twenty-one years old, he had worked in the mine more than a year and understood the business just as well as one over twenty-one years of age. He worked with Daniels, and probably relied to some extent on Daniels' longer experience, but he understood as well as Daniels the necessity of propping the roof and the danger of working under it if it was not safe. Daniels testifies that the roof looked all right and he thought it was all right. So far as appears, the fall of the slate was simply one of those accidents that happen in coal mines unexpectedly, when even miners of experience have no reason to anticipate trouble.

Judgment affirmed.