## New Hughes Jellico Coal Company v. Gray.

(Decided January 23, 1917.)

### Appeal from Knox Circuit Court.

1. Master and Servant—Mines and Mining—Injuries to Servant—Safe Place to Work.—Where a coal miner is injured by dangers created by extracting coal in the progress of his work and at a place where the mine owner is under no duty to prop or timber, the safe place doctrine does not apply.

2. Master and Servant—Mines and Mining—Promise to Repair—Contributory Negligence.—Although the mine owner has promised to prop and timber the roof of a mine at a place where the slate is in a dangerous condition, a servant who thereafter removes the support of the slate by digging out the coal underneath, with knowledge of the fact that the slate will fall if the support be removed, and then works under the slate from which the support has been removed and thus voluntarily exposes himself to a known, obvious and imminent danger, is guilty of contributory negligence as a matter of law.

BLACK, BLACK & OWENS for appellant.

J. D. TUGGLE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Mat Gray, a miner in the employ of the New Hughes Jellico Coal Company, was injured by falling slate and brought this suit to recover damages. From a verdict and judgment in his favor for $1,000.00 the company appeals.

Plaintiff predicates his right of recovery on two grounds: (1) The failure of the company to furnish him a reasonably safe place to work by propping and timbering the roof of his working place; (2) the promise of the company to timber the roof, accompanied by an assurance of safety and a direction to plaintiff to continue his work.

According to plaintiff's evidence, he and his "buddie" were engaged in "driving an air course" in the mine. The vein of coal was about five feet thick. A parting of slate from two to four inches thick ran horizontally through the middle of the vein, thus leaving a little over two feet of coal above the parting and about the same amount below. The coal above the parting is known as the "top bench;" that below as

the "bottom bench." The method of digging and loading the coal was first to take the coal from the "top bench." After doing that the "bottom bench" was mined. Both benches were not excavated at the same time. Plaintiff had not been at work for a day or two prior to August 26th, 1914. In the meantime, his "buddie," Alex. Jones, had been at work. On that morning both plaintiff and Jones came into their working place. Plaintiff noticed some loose slate overhead and called the attention of his "buddie" to it. He and his "buddie" sounded the slate, found it loose and pulled a portion of it down. While attempting to pull another piece of slate, the foreman, Stanley Cole, appeared and told them they ought to pull the slate. Plaintiff told Cole that he and his "buddie" had been unable to pull the slate and asked Cole to pull it down. Cole picked up a bar and pulled at the slate, but could not get it down. Plaintiff says that he then told Cole that he would have to timber the slate or do something with it. Cole said, "All right," and told plaintiff to watch it. Plaintiff said, "I will." The slate referred to was right at a "breakthrough." The air course had been carried five or six feet beyond the "breakthrough." After the foreman left, plaintiff and his "buddie" proceeded to dig and load out the coal from the "top bench" in the air course and extended the excavation about three feet beyond the "bottom bench." At the time of his injury, which occurred between nine and ten o'clock on the morning of August 27th, plaintiff was lying down on the top of the parting, picking coal from the side of the rib, that is, "shearing the rib." While in this position a piece of slate fell from the roof and injured plaintiff about the upper part of his body. The piece of slate that fell on plaintiff was seven or eight feet long and ran with the air course. Plaintiff further says that it was no part of his duty to prop or timber his working place. This duty devolved upon the company. He would notify the company and they would then do the timbering. He admits, however, that the company never set cross collars or upright posts on the top of the "bottom bench." The company did timber, however, in the air course up to where the men were at work, if it was necessary. The piece of slate which fell resembled a "horseback," and it slipped loose from the roof. Plaintiff knew that when the coal was taken out

from under the slate it would fall. The "horseback" was held at one end by the coal which plaintiff and his "buddie" were digging out.

According to the evidence for the company, it was the duty of the company to prop and timber in the air course behind the miners. It was no part of their duty to prop or timber between the lower bench and the roof. It was the duty of the men to remove the slate and look after the roof above the "bottom bench." Alex. Jones, plaintiff's "buddie," says that at the time of plaintiff's injury the "top bench" had been removed for a distance of six or seven feet, and plaintiff was on the "top bench" digging out the coal. This coal was removed the day before. Jones and the foreman further say that the piece of slate that fell on plaintiff was not the piece of slate that plaintiff and the foreman were talking about the day before. They and their witnesses say that the piece of slate near the "breakthrough" was still there and had never fallen. The slate that fell and struck plaintiff was lying right on top of the bench along the rib. The foreman says that plaintiff admitted to him on the day of the accident that the slate that they had talked about the day before was not the slate that fell on him. In rebuttal, plaintiff denied making this statement but did not deny the fact.

On these facts the company contends that it was entitled to a peremptory instruction. One of two propositions is necessarily true. Either the slate which fell on plaintiff was or was not the slate which he and the foreman had discussed the day before. The decided weight of the evidence is to the effect that it was not. Indeed, nearly all of the witnesses say that the slate which plaintiff and the foreman discussed had never fallen. The slate which fell on plaintiff struck him while he was lying on the "bottom bench" and "about balanced on his body." Indeed, plaintiff's injuries were received on the upper part and not on the lower part of his body. If it be true, then, that the slate which injured plaintiff was a different piece from that discussed by him and the foreman, it necessarily follows that the slate fell from the roof above the "bottom bench" and at a place where the company was under no duty to prop or timber. In other words, the danger was such as was created by plaintiff in the progress of his work, and the safe place doctrine has no application. Music's

Admr. v. Northeast Coal Company, 161 Ky. 395, 170 S. W. 971; Eagle Coal Company v. Patrick's Admr., 161 Ky. 333, 170 S. W. 960; Old Diamond Coal Company v. Denney, 160 Ky. 554, 169 S. W. 1016.

On the other. hand, if the slate which fell on plaintiff was the slate discussed by him and the foreman, the question is, was plaintiff guilty of contributory negligence as a matter of law?

Plaintiff's evidence does not show any assurance of safety. It merely shows a promise to timber, accompanied by a caution to watch the slate. The rule is well established that where the servant complains of dangerous conditions under which he has to work, which are due to the master's negligence, and the master has promised to remedy the same, the servant may, in reliance upon the promise, remain for a reasonable time in the employment without assuming the risk of, or depriving himself of the right to recover for, injuries received because of those conditions. This rule, however, is subject to the qualification that it does not apply where the risk incurred in remaining in the employment is so great and imminent that a reasonably prudent man would not incur it. In other words, the promise to remedy the conditions does not make the master an insurer of the safety of the premises for a reasonable length of time thereafter.

The servant must still exercise ordinary care for his own safety. Hence, if the servant exposes himself to dangers that are so threatening or obvious as likely to cause injury at any moment, he is, notwithstanding any promise of his employer, guilty of contributory negligence if he remain at the work. Roccia v. Black Diamond Coal Min. Co., 57 C. C. A. 567, 121 Fed. 451; Shemwell v. Owensboro & N. R. Co., 117 Ky. 556, 78 S. W. 448.

Ordinarily, of course, this question is for the jury, but cases may and do arise where ordinarily prudent men may deduce but one reasonable conclusion from the admitted facts, and in that event the question is one of law. Here the plaintiff admits that the roof was cracked and the piece of slate resembled a "horseback." This piece of slate extended beyond and above the face of the coal. Before he and his "buddie" attempted to remove the coal beneath it, plaintiff regarded the condition as sufficiently dangerous to request the foreman to timber it.

If he had been injured without any subsequent change in the conditions, the question of his contributory negligence would have been for the jury. However, he and his "buddie" went to work and removed the coal from beneath that portion of the slate which extended beyond the face of the coal. He was an experienced miner and admits that he knew that if the coal was removed from beneath the "horseback" the "horseback" would fall, if not timbered. He also knew that it was not timbered. After removing the coal beneath the "horseback" he got upon the "bottom bench" and began "shearing the rib," with knowledge of the fact that the slate was likely to fall at any time and injure him. Under these circumstances, it seems to us that there is no room for honest difference of opinion among reasonable men as to the quality of his act. Notwithstanding the foreman's promise to timber, he voluntarily exposed himself to an obvious, known and imminent danger, which he knew was likely to cause injury at any moment, and was, therefore, guilty of contributory negligence as a matter of law.

The trial court should have directed a verdict in favor of the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.