### Fluehart Collieries Company v. Elam,

#### (Decided December 5, 1912.)

#### Appeal from Johnson Circuit Court.

1. Mines and Mining—Shaft Mine—Personal Injury.—In a shaft mine there were two elevators operated in the shaft, and the shaft in which these elevators ran was in the main entry of the mine, and the miners in going from one side of this entry to the other were compelled to pass through the elevator shaft. The elevators were run without warning or notice or signal, and a miner, in going through the shaft, was caught by the descending

elevator and injured. In an action by him to recover damages—held, that in failing to have a passageway on the side of the elevator shaft through which the miners could go, the mine owner was negligent in failing to furnish the miners a reasonably safe place in which to work.

2. Master and Servant—Assumed Risk.—In accepting employment the servant assumes the risk of such accidents as may happen to him in the ordinary and customary course of his employment, but he does not assume any risk of accident or injury caused by the failure of the master to exercise ordinary care to furnish him a reasonably safe place in which to work.

3. Master and Servant—Safe Place to Work.—The duty of the master to furnish the servant a reasonably safe place is not confined to the precise spot in which the servant works but includes the places to and from which he may be required to go in performing his duties.

4. Negligence—Evidence of Subsequent Improvements or Repairs.—In an action to recover damages for injuries sustained in an unsafe place it is not competent to show that subsequent to the injury the unsafe place was repaired.

HOWES & HOWES and AUXIER, HARMAN & FRANCIS for appellant.

FOGG & KIRK for appellee.

Opinion of the Court by Judge Carroll—Affirming.

This appeal is prosecuted from a judgment for $1,500 entered upon the verdict of a jury in a suit by the appellee against the appellant to recover damages for personal injuries sustained by him. At the time of the injury complained of the appellee was a coal miner, engaged in working for the appellant coal company. The mine operated by the appellant was what is known as a shaft mine, the shaft extending from the surface of the ground a distance of about 110 feet to the coal. In the shaft there were two elevators operated by machinery, situated on the surface of the ground, and these elevators were used for the purpose of bringing coal from the mine to the surface and taking miners and employes of the company to and from the surface to the mine. They were intended to be so operated as that when one was at the bottom of the mine the other would be at the surface of the ground, and when an elevator descended to the floor of the mine it rested upon a frame-work of sills, the floor of the elevator being level with the floor of the mine.

The shaft in which these elevators ran was located in the main entry of the mine, and the miners, in using this entry in going from one side of the mine to the other, were obliged to walk through the shaft in which the elevators ran. When one elevator was down to the floor of the mine the miners would walk through the elevator, but when the elevators were above the mine floor, as often happened, they would walk over the place where the elevator rested when down.

The company had not provided any means or method of warning the miners of the descent of these elevators, and so if one of the elevators was not at the bottom of the mine the only way in which they could tell where the elevators were was by looking, as no signal or notice was given of their movements.

At the time appellee was injured he was directed in a general way by the foreman to go to another part of the entry, and obedience to this order made it necessary that he should go through the elevator shaft. At this time neither of the elevators were at the bottom of the mine, and as appellee was passing over the space where the elevators came down, one of them, quickly descending in the usual way, caught him, and he was pressed against the floor of the mine by the bottom of the elevator, receiving severe injuries.

The case for the appellee was put upon the ground that the company was negligent in failing to furnish him a reasonably safe place in which to work, and in failing to warn him of the danger in going through these elevator shafts; while the company defended upon the ground that the appellee assumed the risk of injury in accepting employment, and besides was guilty of such contributory negligence as would defeat a recovery.

The evidence shows, practically without contradiction, that the method of requiring the miners to pass through these elevator shafts in going from one part of the mine entry to another, was unsafe. It further shows, without contradiction, that a passway could have been made with little expense on the sides of this shaft, through which the employes could have gone with safety in passing from one part of the mine entry to the other, thus avoiding the necessity of going through the elevator shaft. It is further shown by the evidence that there was no time fixed for the descent of these elevators, and that no warning or notice of any kind

was given of their descent. In short, the overwhelming weight of the evidence establishes that the company did not exercise ordinary care to furnish appellee a reasonably safe place in which to work, but on the contrary, furnished him a place in which it was extremely dangerous to work, although it could have been made safe by the expenditure of a few dollars.

It is said, however, by counsel for appellant that as there is no statute in this State, requiring mine owners to provide a passageway around elevator shafts, and as the State Mine Inspecting Department did not object to or complain of the failure of the appellant to have the passageway, it should not be treated as having altogether failed in its duty of furnishing appellee a reasonably safe place in which to work. But the fact that there is no statute in this State on the subject of providing a passageway around elevator shafts, or the fact that the State Mining Department was apparently negligent or indifferent in the performance of its duty, did not excuse appellant from discharging the duty it was under to exercise ordinary care to furnish its employes with a reasonably safe place to work. This duty is imposed upon the master by common law principles and does not require statutory enactment, or Mining Department direction, to make it effective.

As the evidence for appellee made out a good case in his behalf upon the point that the coal company was remiss in its duty in the respect mentioned, it only remains to be seen if the defenses of assumption of risk and contributory negligence can save the appellant from the loss it invited by its failure to have a passageway.

In accepting employment the appellee assumed the risk of such accidents and resulting injury as might happen to him in the ordinary and customary course of his employment, but he did not assume any risk from accident or injury caused by the failure of the coal company to exercise ordinary care to furnish him a reasonably safe place in which to work. The risk that the servant assumes does not embrace or include risks that are brought about by the failure of the master to perform his duty. This case furnishes a good illustration of this exception to the doctrine of assumption of risk. Here the servant was injured by the failure of the master to exercise ordinary care to furnish him a reasonably safe place in which to work, and when the servant, in the

performance of his duty, was injured by the failure of the master in this respect, it is no defense for the master to say that "although I was negligent and the breach of duty I committed resulted in the injury, nevertheless, you took the risk of nonperformance of duty on my part, and, therefore, cannot recover."

We have said in more than one case that the doctrine of assumed risk should be sparingly applied, and in this case it has no place at all. Nor was the appellee guilty of such contributory neglect as would defeat a recovery. It is true he was an experienced miner, but he had never worked in a shaft mine until he accepted employment from appellant two days before he was injured, and except for the slight knowledge of the manner in which the elevators were operated acquired by his use of the elevators four times during these two days, he had no knowledge gained from experience concerning the danger attending the operation of the elevators or the danger attending the act of passing through the elevator shaft when one of the elevators was not fully down. When he started through the elevator shaft and did not find either of the elevators there he probably knew that one of them would be down in a short time, just when he had no means of knowing. He also, of course, knew that if he was caught by the descending elevator it would cost him his life or cripple him severely. But this knowledge and his failure to wait until the elevator came down did not as a matter of law defeat his right to a recovery.

He testified that when he was ordered by the foreman to go to another part of the mine, obedience to the order made it necessary that he should pass through the elevator shaft, and that when he got to the shaft and did not see any elevator there he looked up the shaft but did not see the descending elevator, nor did he hear it coming, and started through, and was caught, as before stated.

It is argued by counsel for appellant that appellee should have taken particular pains to find out where the elevator was and should have exercised a high degree of care to protect himself from injury by it, as he must have known in a short time at least it would come down. He was not, however, under the circumstances, required to exercise more than ordinary care, for his own safety, and the question, as to whether he exercised the degree of care necessary to excuse him from such negligence

as would defeat a recovery, was properly submitted to the jury, and the jury in finding a verdict in his behalf must have believed that he exercised the measure of care required of him.

It is also complained that the court committed error in adding to the instruction, telling the jury that it was the duty of the appellant to use ordinary care to furnish appellee a reasonably safe place to work, the words, "And a reasonably safe way to pass to and from his work while inside the mine, considering the circumstances, place and character of work to be done." We do not think the criticism of this instruction is well taken. It was as much the duty of appellant to exercise care to furnish appellee a reasonably safe way to go to and from his work while inside the mine as it was to exercise care to furnish him a reasonably safe place in which to work. The duty of appellant to exercise ordinary care to furnish appellee a reasonably safe place was not confined to the precise spot in which he worked but included the places to and from which he might be required to go in performing his duties.

The further error is assigned that the court permitted counsel for appellee to prove that a passway had been constructed around the elevator shaft after the accident to appellee occurred. The admission of this evidence was error, but not prejudicial under the facts of this case. The ground upon which subsequent improvements or repairs is excluded is that this evidence does not establish that the wrongdoer was guilty of negligence before the accident happened. Louisville & Nashville R. R. Co. v. Morton, 121 Ky., 398. But in this case the uncontradicted evidence shows that it was negligence not to have a passway, and so evidence that appellant made a passway after the accident could not have prejudiced its rights, as in making the passway it only did what all the witnesses said should have been done before the accident.

Upon the whole case we think the appellant had a fair trial, and the judgment is affirmed.