## Louisville & Nashville Railroad Company v. Mahoney's Administratrix.

(Decided May 16, 1913).

### Appeal from Nelson Circuit Court.

1. **Railroads—Action by Personal Representative for Damages—Negligence—Evidence.**—In an action by the personal representative against a railroad company to recover damages for the death of a car repairer resulting, as alleged, from the gross negligence of other employees of the company in backing cars against the car he was inspecting and about to repair and causing it to run over him, it was competent for the plaintiff to prove that by a custom obtaining in the repair shops of the defendant, it was the duty of decedent to inspect the car to ascertain what repairing thereof was necessary, at the time and in the manner he did, without awaiting a command from a superior to do so.

2. **Railroads—Action by Personal Representative for Damages—Lookout Duty—Negligence—Evidence.**—It was also competent for the plaintiff to prove that by a further custom obtaining in the defendant's shops, it was the duty of its servants in charge of the backing cars, and also of its foreman in control of the track containing the car the decedent was inspecting, to maintain a lookout and give the decedent warning of its coming, and the failure

of such servants in charge of the backing cars to maintain a look-out, or of the track foreman to give the decedent warning of their movements was gross negligence, which entitled plaintiff to re-cover, if such negligence caused the decedent's death.

3. Railroads—Action by Personal Representative—Duty of Decedent to Repair Defective Car—Inspection.—If, as there was evidence conducing to prove, it was the duty of the decedent to repair the defective car and the inspection of it was necessary to enable him to know what repairs were required, and how to make them, the inspection was as much work as would have been the subsequent labor of making the repairs, if the decedent had lived to perform it.

4. Instructions—When Not Error to Refuse Peremptory Directing Verdict for Defendant.—It is not error to refuse a peremptory in-struction directing a verdict for the defendant, if there is any evidence conducing to prove a right of recovery in the plaintiff.

BENJAMIN D. WARFIELD, JNO. S. KELLEY for appellant.

NAT. W. HALSTEAD and EDWARDS, OGDEN & PEAK for ap-pellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

On December 9th, 1910, Thomas J. Mahoney, many years a car repairer in the employ of the appellant, Louisville & Nashville Railroad Company, lost his life at its South Louisville yard or shops, while under a car with which other cars, backed by one of its engines, came in contact, causing it to run over and kill him.

This action was brought by the decedent's widow and administratrix to recover of appellant damages for his death; it being, in substance, alleged in the petition that it was caused by the gross negligence of the appellant, and its servants superior in authority to the decedent, in failing to provide him, as a car repairer in its service, a reasonably safe place in which to work upon a defective car it was his duty to repair and which he was engaged in repairing when appellant's servants before mentioned, by their further gross negligence, permitted other cars, moved by one of its engines, to back against same, caus-ing it to run over and kill him.

Appellant's answer by its denials put in issue every material allegation of the petition, and contained a plea of contributory negligence, which was controverted by reply. The trial resulted in a verdict in appellee's favor for $3,000 damages, and appellant's dissatisfaction with the verdict and judgment rendered thereon led to this appeal.

'A reversal of the judgment is asked by the appellant on the single ground that the trial court erred in refusing the peremptory instruction, directing a verdict for appellant, asked by it at the conclusion of appellee's evidence and again after all the evidence was introduced. As such an instruction could properly have been given only upon the ground that there was no evidence to authorize a recovery, it becomes necessary for us to determine from the record whether there was any evidence to support the verdict.

It is conceded that Mahoney had, for eighteen years prior to his death, been employed by appellant as a car repairer and during the greater part of that time he worked at its South Louisville shops. It must be presumed, therefore, that he was thoroughly familiar with all rules and regulations controlling the work performed there, and particularly such as related to the performance of his own duties. Connected with shop 13 is a large shed. The yards contain many tracks, several of which run through this shed; and upon these tracks, as well as others outside the shed, crippled cars are placed to be repaired; the use of the tracks outside the shed being required because those inside will rarely hold all the cars needing repairs. Track 8, outside the shed, is one of the most important in the yards and is known as the "revenue" track, because used to hold crippled foreign cars, which have to be hurriedly repaired that they may not be delayed in reaching their destination. The car that ran over and killed Mahoney was a foreign car which had been defectively worked on and "set-back" on track 8 for further repairs. According to the evidence introduced in appellee's behalf, the backing engine and cars that struck the car and caused it to run over Mahoney, were moved without a signal or warning of any kind, and without maintaining a lookout for persons on track 8 or in the yards, and there seems to be no material contradiction of this evidence.

It is appellant's contention that Mahoney was not at work on the car on track 8 when killed or charged with the duty of inspecting or repairing it; and that he inspected the car with no other object than to gratify his curiosity. Though there is evidence in the record to sustain this contention, furnished mainly by the witness Burk, who was with the decedent when the latter was killed, there was considerable evidence conducing to prove that the decedent in going under the car to ascer-

tain what was wrong with the work that had been done on it, performed a duty required of him by a rule of the appellant, and also a custom long obtaining in the South Louisville shops, to which all car repairers in its employ had to conform; and that his going under the car before beginning the work of readjusting the draft beam, was necessary to enable him to discover the defect in its former attempted adjustment and proceed at once to remedy it.

The rule or custom referred to grew out of the manner in which the work of appellant's car repairers had to be done. There were between four and five hundred of them employed in the South Louisville yards and shops, all doing piece work; that is, they were paid a schedule price for each piece of work done, and if there happened to be at times, as was frequently the case, a scarcity of cars to be repaired, some of the repairers would find little work to do. According to appellee's evidence, the men were required to work in pairs and as partners. If one of the partners absented himself for a day or longer, another car repairer would be designated by one of the foremen to take his place with the remaining partner until his return, but upon his return he would assume his old place with the partner who had remained at work. It was, according to much of the evidence, also a custom in appellant's shops, that if one partner, in the absence of the other, began to repair a car which was unfinished when the absent partner returned, it was the duty of the latter to go to work upon such car and assist the partner who began to repair it to complete the work. The hour for commencing work in the shops was 7 o'clock a. m., and when the whistle blew as the signal for beginning work, the car repairers who had assembled in the shed for work, would rush in pairs to the crippled cars left on the shed and yard tracks and the first car reached by any pair was theirs to repair to the exclusion of all other workmen.

It further appears from the evidence that the decedent and Burk constituted a pair of car repairers and worked as partners in appellant's shops, and that on December 8, 1910, the decedent was not at the shops and did no work for appellant. On that day, however, Burk, assisted by another employe whom the foreman had directed to take the decedent's place during his absence, attached a wooden beam to the car by which Mahoney was later killed, but did the work improperly; when the car was removed from the track where it had been worked

on, the inspector discovered that the work of Burk in attaching the beam to it had been defectively done, consequently the car was "set-back" and run on track 8 to be properly repaired, where it was found by Burk and Mahoney when they reached appellant's shops. Burk, or the foreman of track 8, then informed Mahoney of the work that Burk had defectively done on the car the day before and he and Mahoney went to see what was the matter with and repair it. While the latter was under the car trying to ascertain what was wrong with Burk's work of the previous day, other cars, moved by one of appellant's engines, struck and caused it to run over and kill him.

It was not made to appear that Mahoney received an order from a superior to repair the car, but, such an order was not necessary, if, as appellee's evidence tended to show, the duty of inspecting and repairing the car was imposed upon him by a rule or custom prevailing among appellant's car repairers in its South Louisville shops. We have already indicated that the custom referred to was, that if the partners were engaged in repairing a car which was not finished during the day, it was their duty upon returning to the performance of their duties the following day, to resume and continue work on the unfinished car until the repairs were completed. The same custom, according to the evidence, obtains where the work is commenced on the car by one of the partners in the absence of the other and is defectively done; and if necessary to be redone, when the partner who had absented himself returns, the two must, together, go to work first on that car and complete the repairs necessary thereon. In view of the proof of this custom, Mahoney in going to and inspecting the car in question, for the purpose of ascertaining what was wrong with the draft beam and then of remedying it, was not performing an unrequired or self-imposed duty.

Appellant's counsel rely greatly upon the testimony of Burk, which was to the effect that Mahoney in thus acting was performing a self-imposed duty. Burk's testimony went little farther than to deny that what Mahoney did was required by any custom prevailing in appellant's shops, or that he was at work on the car when killed. While his testimony, and that of other witnesses introduced for appellant, tended to disprove the custom referred to, there were, on the other hand, about as many witnesses for appellee whose testimony tended to prove

the custom. This conflicting evidence necessarily required the submission of the case to the jury.

Appellant's counsel also lay great stress upon the fact that Mahoney did not have with him his tools when killed, and this, they earnestly argue, shows that he was not then at work on the car, and also that he did not go to the car with any purpose to repair it. Unexplained, this fact would be entitled to more than ordinary weight; but as there was evidence in appellee's behalf that car repairers frequently go to inspect defective cars without taking their tools with them, preferring to get them after ascertaining what work is to be done and what tools would be required to perform it, the argument loses much of its force.

If it was the duty of Mahoney to repair the car and the inspection of it was necessary to enable him to know what repairs were required and how to make them, the inspection was as much work as would have been the subsequent labor of making the repairs if he had lived to perform it. Therefore, the fact that Mahoney at the time he was run over by the car was not actually engaged in the work of repairing it is not material. The further question as to whether he was guilty of contributory negligence and such negligence caused his death was properly left to the jury. On this point several of appellant's witnesses testified that it was the decedent's duty to place on the car a blue flag before going under it, which would have warned other employes moving cars on track 8 that he was at work upon it. On the other hand, numerous witnesses for appellee testified that the setting up of the blue flag, while required on some other tracks in the yards, was not required by any rule of appellant on track 8, because that track was so constantly used for repairing cars which were not owned by appellant, and such cars were so constantly being run from it to be attached to trains and hastened to their destination, that by a custom obtaining in appellant's repair service, the foreman of track 8 was charged with the duty of looking out for the safety of car repairers at work thereon, and of warning the crews of moving trains of the presence of such car repairers on the track, and the latter of the movement in their direction of all trains.

While the evidence on this point was conflicting, if the jury accepted that of appellee's witnesses, as they manifestly did, it left in their minds no grounds for a belief that Mahoney in going under the car as he did assumed

the risk attending such an act. On the contrary, he had the right to assume that the track foreman would protect him from moving cars while he was engaged in inspecting and repairing the car in question. As said in A. Bentley & Sons v. Bryant, 148 Ky., 640:

"In the absence of actual knowledge on the part of the servant (i. e. of the danger) there is no assumption of a risk by him arising from the master's violation of a primary duty; and the master is liable whether such negligence alone results in injury to the servant, or concurs with the negligence of a servant in a different department or with the negligence of a fellow servant." Fluhart Collieries Co. v. Elam, 151 Ky., 50.

In Louisville & Nashville Railroad Company v. Potts, 92 Ky., 30, we said:

"The jury were authorized to believe the foregoing facts, notwithstanding appellant's evidence to the contrary. The question then is, was the fact that appellant suffered said detached cars to move on the track at said place without a lookout, to give warning of their approach, wilful negligence? The Shelby case, 85 Ky., 224, which occurred in the same town, and the Conley case, 89 Ky., 402, seem conclusive of the question. It is held in those cases that neither a train nor a single car should be permitted to move on a side track in a city or town "without some servant is in position to give warning of its approach and to control its movements," and also held that to let a train or car move in such place without a servant being in a position to control it and give warning of its approach is wilful negligence."

In the thoroughly considered case of Louisville & Nashville R. R. Company v. Lowe, 118 Ky., 260, we held that "where a railroad employed nearly two hundred men at a junction, including plaintiff, who was employed as an assistant car inspector, and as such was required to and did go on defendant's tracks in the performance of his duties, defendant owed him the duty to keep lookout on an engine backing down upon him from the rear, while plaintiff was passing along the track to a tool house after having inspected a train, in order to prevent injuring him."

If such is a sound rule as to an employe walking a track of the railroad out in the open, where there was, at least, some opportunity for him to see or hear an approaching engine or cars, a fortiori is it applicable to a case like the instant one, where the employe killed, by

backing cars was in yards with five hundred other employes and in a situation that rendered it impossible for him to know of the coming of the moving cars.

The instructions of the trial court seem to conform to the views we have expressed, and there being no error in that court's refusal of the peremptory instruction, the judgment is affirmed.