## High Splint Coal Co. v. Ramey's Adm'x.

(Decided Jan. 18, 1938.)

TYE, SILER, GILLIS & SILER and T. E. MAHAN for appellant.
W. T. DAVIS and J. B. SNYDER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

Henry Ramey, employed as a watchman by the appellant, High Splint Coal Company, was accidentally killed. His administratrix has recovered a judgment for $3,500 against the company.

The company was erecting a new tipple by using two shifts of carpenters. The night shift went off duty at 4:30 o'clock in the morning and the day shift went to work one hour later. Ramey had been directed to be there when the night crew quit so that he could guard the tools during the intervening hour. On the morning of the accident he came about 4 o'clock. It was perhaps 15 minutes later when he was struck in the head by a steel "wrecking bar," falling thirty or forty feet off the structure. He died the next day of his injuries.

The defendant could not rely upon the defenses of assumed risk, contributory, or fellow servant's negligence, because it had not elected to operate under the provisions of the Workmen's Compensation Act, Ky. Stats., sec. 4880 et seq. Section 4960, Kentucky Statutes. This fact, however, did not permit recovery unless the plaintiff proved prima facie that the defendant was negligent and the negligence was the proximate cause of its employee's death. High Splint Coal Company v. Baker, 247 Ky. 426, 57 S. W. (2d) 60.

The defendant permitted the case to go to the jury on the plaintiff's proof alone after the court overruled its motion for a peremptory instruction. The failure of the plaintiff to establish negligence in several essential particulars is claimed. It is further submitted that the plaintiff had pleaded specific negligence of a failure to furnish the deceased a reasonably safe place in which to perform his services, and that it was unsafe because the scaffold on which the carpenters were at work was weak and unsteady, which condition caused the "wrecking bar" to fall. The appellee maintains that her petition pleaded general negligence and that it was estab-

lished. Among other grounds on which a reversal is sought is that there is a fatal variance between the allegations of the petition, the evidence, and the instructions.

The carpenters used the structure they were erecting as a scaffold. It had not been fully or securely braced as the main timbers were put in, so there was some unsteadiness. Braces were being put on when the accident occurred. A carpenter, Hines, had been using the "wrecking bar" (which is of steel about seven-eighths inches in diameter and thirty inches long) as a lever. He laid it down on a ten-inch board on which he was standing and in a moment or so it fell off. Hines did not testify. No witness was able to say whether the bar rolled off or was accidentally kicked off by Hines or was caused to fall by the shaking of the structure. A few tools had dropped off the tipple during the progress of its construction, caused by different things. One of these was the vibration or shaking of the tipple when timbers were pulled up by the use of a block and tackle or while heavy hammers were being used. But no one was engaged in doing either of those things at the time of the accident.

We do not regard the appellant's argument that Ramey was not to go on duty until 4:30 o'clock and was not required to be under the structure in the performance of his duties as a watchman as sufficient grounds for holding that he was not injured while on duty or where he was required to be. The carpenters were in the act of quitting, some of them being on the ground at the time. It appears that Ramey was a night watchman, but his boss had told him a few nights before to go home and sleep and to report at the tipple in the morning before the night shift quit work. A proper consideration of his duties and interpretation of his directions must result in saying that he was on duty and engaged in the performance of his service when he was injured. The master's duty to provide a safe place to work includes places to and from which the employee might be required or expected to go. Fluehart Collieries Company v. Elam, 151 Ky. 47, 151 S. W. 34; A. Bentley & Sons Company v. Bryant, 148 Ky. 634, 147 S. W. 402; Stearns Coal & Lumber Company v. Smith, 231 Ky. 269, 21 S. W. (2d) 277.

The instructions were confined to the issue whether or not the defendant had negligently furnished its employee a defective or unsafe working place and by reason thereof the ''wrecking bar'' was caused to fall and kill him. It does not seem to us the facts bring the case within the safe place doctrine. That doctrine relates to the physical conditions under which or the instrumentalities with which the employee labors. The accident here was not the result of the existence of such condition. It was caused by the intervening act of another employee or individual. The structure and the immediate location of the deceased employee were incidents but not the proximate cause. In itself it constituted no hazard and was fraught with no peril, active or latent, in the discharge of his duty. The place was perfectly safe unless and until some one other than the servant did something. The carpenter and the watchman were not engaged co-operatively in performing any work. The negligence, if any, was that of the carpenter placing the ''wrecking bar'' where it was likely to fall. Cf. Louisville & Nashville Railroad Company v. Napier, 223 Ky. 417, 3 S. W. (2d) 1070, 64 A. L. R. 513. The fact that it may have been negligence and dangerous for Ramey to be under the structure is not to be considered, because, as stated, his contributory negligence, if any, is not available as a defense. It seems to us, therefore, that the judgment must be reversed on this account and the case remanded for further pleadings, if desired, and another trial.

Judgment reversed.