## Carbon Mining Co. v. Ward's Adm'x.

March 14, 1944.

Woods, Stewart & Nickell for appellant.

J. G. M. Robinson and Davis M. Howerton for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Ward, a coal miner, met his death on December 8, 1938, while in the employ of appellant. It was charged that while engaged in his regular duties a large piece of slate fell from the roof of the mine causing the car

upon which he was riding to tip up, crushing decedent's head between the mine roof and a coal car, resulting in his death. The basic charge of negligence was the failure of appellant to furnish a safe place in which to work, or with safe appliances or material with which to work.

Appellant by answer (and amendment) denied all allegations save and except such as charged that while it was eligible to accept and operate under the terms of our Compensation Laws it had failed so to do. Affirmatively it plead such negligence on the part of decedent as to constitute the sole proximate cause of his injury; a reply in denial completed the issue. Upon a jury trial appellee was awarded $5,000 damages; appellant's motion for new trial, supported by eight or more grounds, was overruled. In brief it is contended that the court erroneously overruled appellant's motions made at the close of plaintiff's and all testimony, for a favorable verdict, because the proof failed to show any act of negligence on the part of employer, and further that the injury was caused solely by the negligence of decedent.

Deceased was a strong able bodied man, about 39 years of age and an experienced coal miner. At the time of the accident Riley and Leonard Steele, a fellow miner, were working in room No. 4 off the entry, the room was about 12 x 14 feet, and the vein of coal was approximately 4½ feet thick at this point. The two were loading a car standing about 4 feet from the face of the coal. Steele was standing near one end of the car nearest the face of coal. Ward was at the other end on the car leaning over cribbing the coal. While in these positions a heavy piece of slate, estimated to be 18 inches thick, 5 or 6 feet long and 3 or 4 feet wide, suddenly fell from the roof "brushing" Steele and striking his end of the car, causing it to tilt up suddenly, and crushing Ward's head between some part of the car and the mine top. Ward was taken outside the mine and died shortly thereafter.

Steele said Ward had been working in appellant's mine for more than three years. He and Ward had worked in room No. 5 until a shot was cleared up and had then gone to room No. 4 to clean up the cut of coal. They had loaded one car of coal on the morning prior to the accident, which occurred about 3:20 p. m.

They had been moving between the two rooms in the manner for "a right smart bit." He said that they had tested the roof that morning by sounding and it "rang clear; sounded safe."

McAlvin, a coal cutter, came into the room about one o'clock and cut coal, and the two went in and shot the coal down and left to let the smoke clear out, returning in about thirty minutes. After one car had been loaded from this cut they tested the roof and the sound was good. The car was hauled out and they tested again and the slate was "drummy." The two then discussed the situation, concluding it was bad, Ward suggesting that they stay away from this crib as far as they could; Steele went to the left hand corner and Ward to the right, and proceeded to load three more cars of coal. When the driver brought in another car Ward said that would be the last one as "we have a bad piece of slate." The driver suggested the setting of a safety post, but they continued to load the last car. He said they had been given instructions to set safety posts immediately after a cut of coal had been shot down. He and Ward did not at the time discuss the necessity of setting a post, because they were in a hurry to get the load out and then "shoot the slate." They had six or seven posts and caps "lying around back in there." Steele went back to the spot the following morning and found it in the same condition. Steele admits that it would have been safer to have placed a post under one end of the piece of slate since he said that the "shot" caused it to become loosened, and that if they had put a prop under the front end the slate would not have fallen. It appears that a portion of the slate was supported by the seam of coal. He said that while he knew the danger he made no report to the mine foreman.

The foregoing is naturally the only testimony as to the manner of the accident. In addition to this proof the plaintiff introduced several miners, some who had worked in the particular mine and others who were familiar with it, or had worked in similar mines. David Mirandi, a miner of experience, and an uncle of the wife of deceased, had formerly worked in appellant's mine. He said the top was soft clay running from 4 to 10 feet up to the rock; that there were "kettle tops" and "horse backs" all through the mine. He described what he thought was the room in which the two miners had been working. His opinion was that in order to be

safe the room should have had large headers. He admitted that he had never been in the room where the accident occurred, and hence did not know the condition it was in at that time. He said he saw no posts in the room. Other miners of less experience testified about the same way, one saying he saw three posts in the room, others saying they did not see any. One miner said the room was posted but there were no "headers."

Charles Moore testified for defendant; he had worked in this mine for five years. He said that he took five or six posts into the room at 10:30 a. m. of the day of the accident; there were some caps and props already in the room. He hauled in two empties at 1:30 p. m. He said that when he took one car out, which Steele and Ward had loaded, Ward was sitting on the car smoking a cigarette and remarked that he had 18 cars on "this pay" and said, "We are going out for the day; we have a bad piece of roof," and he suggested that they had better put in a post, and Ward replied that a safety would be in the way; that if they set posts they couldn't get the coal out on the side.

George McAlister, an experienced miner, made a cut of coal in room No. 4 about 1:30 p. m. He did not notice any slate or soapstone in the place. He saw timbers in the room. Howard Gullett, a miner of sixteen years' experience, was in the room the next day, and saw posts and caps around the place where the accident occurred. He agreed as all did that the shooting and taking out the coal loosened the slate, and that one good post under it would have made it safe, and testified the same as to customs of foreman to give instructions.

Two or three other miners testified to the same facts, all expressing the opinion that one post would have provided safety. All said they had instructions as to safety, and that it was the loader's duty to set posts where there were loose rocks before loading. Graves Hatfield, with twenty years' experience, and mine foreman, testified as to duties of diggers and loaders; he said his assistant was thoroughly qualified for duty. It was not the practice to put headers in this room, or similar rooms, nor practicable to put headers under this piece of slate; it would have made work impossible. He gave instructions to the men from time to time as to their duties. Ward had been working with him for four or more years and he had given him instructions

as to setting up safety posts. The assistant foreman testified to the same effect.

Under the proof there is no escape from the conclusion that Ward's injury was the result alone of his negligence, and that no act of negligence on the part of employer is shown. The rule applicable in cases where an employee is injured while in the employment of one eligible, but not operating under our Compensation Laws is so clearly stated in Ward v. Marshall, 293 Ky. 18, 168 S. W. (2d) 348, that we do not find it necessary to restate it. That rule has been applied in many cases under facts so similar to those existing here that reference to a few will demonstrate the soundness of our conclusions. High Splint Coal Co. v. Baker, 247 Ky. 426, 57 S. W. (2d) 60; Baker v. High Splint Coal Co., 258 Ky. 786, 81 S. W. (2d) 577; Duvin Coal Co. v. Fike, 238 Ky. 376, 38 S. W. (2d) 201; Hooks v. Cornett Lewis Coal Co., 260 Ky. 778, 86 S. W. (2d) 697, and approved on various points in the more recent cases of Southern Mining Co. v. Lawson, 279 Ky. 659, 131 S. W. 831; High Splint Coal Co. v. Ramey's Adm'x, 271 Ky. 532, 112 S. W. (2d) 1007.

Counsel for appellee correctly states that the issue here is confined to one of negligence and proximate cause, and as correctly says that under the rules stated if appellant was guilty of any act of negligence at the time and place "where Ward's negligence or knowledge or failure constituted only a concurring or contributory cause, such was not the sole cause of his death." It is then argued that there was ample proof of the failure to furnish sufficient timbers to make the mine roof safe, a duty owing to the miner by KRS 352.330, which requires the mine foreman to see that workers are furnished with sufficient props, cap pieces, etc., suitable for use in the particular working place.

As we read the evidence the proof was overwhelming that this section of the statute had been complied with. Steele, who was plaintiff's witness, is corroborated by numerous witnesses in this respect. KRS 352.200 provides specifically that it is the duty of every miner to examine the roof before commencing work in his working place. If he finds loose rock or slate which he can remedy, he shall take down the loose substance or securely prop it. If a dangerous situation arises during the progress of the work he shall either make it safe

or abandon the place until it is made safe. Subsection 2 of the same section provides: "Where the operator elects to do the timbering the miner shall forsake (the) place until the place has been made safe." Here it was shown that while it was the duty of the operator to supply the materials, it was the duty of the miner to use them when he thought it necessary, or if he elected not to do so, to abandon the working place until made safe, and on these duties the proof shows Ward and other miners to have had instructions.

We do not think there was "ample" proof of the failure of the operator to furnish proper posts and other safety materials to be used in propping loose slate. We cannot agree that the proof was sufficient to take the case to the jury. If we are correct in this, it follows that the court would have been justified in granting a new trial, else this court would have held error. Here the proof of three or four persons, who were in the mine room following the accident, goes no further than to the effect they did not see any posts in the room. This is negative testimony, and since the abolition of the scintilla rule would not furnish sufficient proof to take the case to the jury, certainly not to overcome the positive proof to the contrary.

Appellant under the proof was entitled to a favorable directed verdict. Judgment reversed, with directions to grant appellant a new trial, whereupon if the proof be substantially the same the court will so direct.