## Jellico Coal Mining Company v. Helton.

(Decided February 26, 1914.)

### Appeal from Whitley Circuit Court.

1. Master and Servant—Mines and Mining.—Where miners are directed by the mine boss to work at a place pointed out by him, they have a right to assume that this place is reasonably safe for the work they are to do, unless the danger is so obvious as to put an ordinarily prudent man on notice that it is unsafe.

2. Master and Servant—Mines and Mining—Creation of Danger in Work.—Where a mine boss knows what kind of work the miners are going to do and that it will probably have a tendency to weaken the roof at the place where they are working, thereby causing rock or slate to fall, and he knows that the roof in that vicinity is weak, he should, before ordering the miners to do the work, take care commensurate with the probable danger to make the place safe, or he should warn them that they must observe extra care on account of the dangerous conditions prevailing.

TYE & SILER for appellant.

R. L. POPE and R. S. ROSE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This appeal is prosecuted by the appellant coal company in an effort to obtain a reversal of a judgment against it for one thousand dollars recovered by the appellee, Helton, in a suit for personal injuries received in a coal mine operated by the coal company.

Helton was an experienced miner, and at the time he received the injuries complained of was working with one Manning as his helper or "buddie." Manning was operating a coal cutting machine and Helton was nearby carrying the dirt away when a very large rock fell from the top of the place where they were working and injured Helton quite severely.

At the time of the accident, Helton and Manning were opening up a room neck on cross entry number eleven, about twelve feet from the end of this cross entry. The cross entry had been opened for about a year and a good many hill seams, that were regarded as dangerous, had made their appearance in this entry in the vicinity of the place where Helton and Manning were working. Jenkins, the mine boss, knew of these hill seams and their location, and it appears in the evidence that on the

morning of the day of the accident, either at the suggestion of Helton and Manning or some one else, he made an inspection of the roof of this entry and directed Helton and Maning to go to work at a point that he regarded as safe, and they were working at the place directed by him when the rock fell about three hours after they had commenced work under his direction. It appears that the rock that fell extended a few inches inside the face of the coal that Manning was cutting on the side of the entry, and also extended out several inches into the entry, the rock being about 40 inches by 48 inches.

Neither Helton nor Manning made any inspection of the entry, nor had it ever been propped or protected in any way to keep the roof from falling. The evidence shows that it was not their duty to inspect but that this was the duty of the mine boss, and he testified he made an inspection before directing Helton and Manning where to work. His testimony is to the effect that he sounded the roof at this place with a pick and did not discover any defects in it, while Helton says that he did not see him use any pick.

However this may be, it is agreed by all parties that the mine foreman did make some kind of an inspection and that he did direct Helton and Manning to work at the place where they were working when the accident happened, and that they did not make any inspection. Nor is it contended that they were under any duty to make an inspection other than such an inspection as ordinary care for their own safety might impose. It is further shown, that after the rock fell, a hill seam could be seen at the place from which it fell, thus indicating that the roof of the entry at that place was not safe.

On this evidence it is strongly contended that the falling of this rock was not due to any carelessness or negligence on the part of the mine boss or to any failure to inspect or to exercise ordinary care to furnish a reasonably safe place to Helton and Manning to work, but that the rock was caused to fall by the weakening of the supports of the roof, which contained this rock, by the work that Helton and Manning were doing.

It is further said that if the roof was defective, Helton and Manning, who were experienced miners, should and could have discovered it. In answer to this the argument is made that it was no part of the duty of Helton and Manning to inspect the roof. That they had a right

to rely on the inspection made by the mine foreman and his direction to work at this place, was to them an assurance of safety. That the rock was not caused to fall by reason of the work they were doing but on account of some inherent defect in the roof that could have been discovered by the mine boss if he had made a careful examination. That in no event was the condition so dangerous or so obvious as to direct their attention to it, or of such a nature as could be discovered by the exercise of ordinary care upon their part.

There is also a suggestion made by counsel for appellant that Manning and Helton were fellow servants, and for this reason there should be no recovery if the accident was due to the failure of either of them to exercise ordinary care. We do not however find it necessary in disposing of this question to consider whether Manning and Helton were fellow servants or not, as under the evidence both of them were charged with the duty of exercising ordinary care to save themselves from injury, and neither of them was guilty of any more negligence than the other. If one of them was negligent, both of them were, for both of them were experienced, capable miners, working directly together, and any danger that could have been discovered by one could have been discovered by the other.

To put it briefly, the case for the appellee is rested on the ground that the duty of inspection did not devolve on either Manning or himself, and that when they were directed to work at the place by the mine foreman, who was charged with the duty of inspection, this exonerated them from the charge of assuming the risk or being guilty of contributory negligence, as the danger of the place was not so obvious that a person of ordinary prudence would not have undertaken the work under the direction of a superior, and we think the weight of the evidence sustains this view of the case.

Helton and Manning both testified that there were no props or cross timbers at the place where the rock fell, and that they did not know that the slate was in a loose or dangerous condition, and there was nothing to indicate that it was liable to fall. They further say that there were no hill seams discoverable by ordinary care at the place where they were working when the rock fell. That Jenkins, the mine boss, when he examined the roof in the morning, just before they went to work, discovered

hill seams in the roof in that vicinity, and directed them to begin work at a place that he said was safe, and that he did not sound the roof with his pick at the place where he ordered them to work.

Under these circumstances we think Helton and Manning had a right to assume that the place where they were directed to work was reasonably safe and to rely on the assurance of the mine boss. The very fact that the mine boss knew that there were hill seams in this vicinity and that the roof was not propped or timbered, put upon him the duty of taking such care as the conditions demanded to make the place reasonably safe before directing these miners to go to work.

Of course miners, like all other persons engaged in hazardous employment must exercise ordinary care to protect themselves and to avoid accident or injury from the danger incident to the work in which they are engaged. But this duty is much minimized when they are directed by their superior where to work and he knows what kind of work they are going to do. Generally when this condition exists, the master cannot escape liability unless the danger was so obvious that a person of ordinary prudence would not have undertaken the work. City of Owensboro v. Gabbert, 135 Ky., 346; Williams Coal Co. v. Cooper, 138 Ky., 287.

It is further attempted to bring the case within the rule that Helton and Manning created the dangers of the place where they were at work by the work they were doing, and the argument is made that this rock was caused to fall by the fact that the roof of the mine was weakened in the process of sawing coal. It is entirely probable that the work these miners were doing did in some degree contribute to the falling of the rock, but we do not see that this condition helped the case for the coal company. The mine boss knew as well as the miners what kind of work they were going to do and how they were going to do it. He knew as well, if not better than they did whether the work they were doing would have a tendency to weaken the roof, thereby causing any loose rock or slate to fall, and knowing, as he did, that the roof in that vicinity was liable to fall, he should, before ordering these miners to do the work, have taken care commensurate with the probable danger to make the place safe, or should have

warned them that they must observe extra care on account of the dangerous condition prevailing. But neither of these things was done. Ashland Coal & Iron Co. v. Wallace, 101 Ky., 637.

The instructions are also criticised, but we do not think they are reasonably or fairly open to objection. The jury were told in these instructions that it was the duty of the company to exercise ordinary care to furnish Helton a reasonably safe place in which to work, and if they believed it failed to do this, and by reason of this failure Helton was injured while exercising ordinary care for his own safety, and if they further believed the dangers of the place at which Helton was assigned to work were known to the company, or, in the exercise of ordinary care, could have been known to it, and were unknown to Helton, and could not have been discovered by him in the exercise of ordinary care, they should find for the plaintiff. ,

In another instruction they were told that it was the duty of Helton to exercise ordinary care for his own safety, and if they believed that the place at which he was assigned to work was in a reasonably safe condition at the time work was commenced but that the work Helton and Manning did weakened the roof and caused the same to fall, and it would not have fallen except for this, they should find for the defendant.

It is further urged as a reason for reversal that the damages are excessive. We do not think so. Helton, on acount of the injuries received, was on crutches for about two months and suffered great pain in various parts of his body. The testimony shows that Helton, although able to work after he could get about, suffered greatly with pain in his ankle, and especially so when he attempted to walk after resting a while. It is also doubtful from the evidence if he will ever recover the full use and strength of this ankle which was enlarged at the time of the trial, and it is quite a serious thing for a laborer who must earn his living by the use of his arms and legs to have either of these members crippled probably for life, or at least in such a way as to cause him continual apprehension and much pain.

Some other minor errors are pointed out, but they are not of sufficient importance to justify the extension of this opinion in discussing them.

The judgment of the lower court is affirmed.