## Stratton v. Northeast Coal Company.

(Decided April 23, 1915.)

### Appeal from Floyd Circuit Court.

1. **Master and Servant—Damages.**—The mere fact that a servant receives an injury while engaged in the service of the master, does not make the master responsible for the damages.

2. **Damages—Negligence.**—It is a well settled principle, that one can not recover damages, unless the negligence relied upon for the recovery is the proximate cause of the injury.

3. **Master and Servant—Damages—Negligence.**—Before an employee can recover damages from his employer, he must show that his injury was caused by some negligence of the employer, or some other servant of the employer, whose negligence can be imputed to the employer.

4. **Master and Servant—Safe Place to Work.**—It is the duty of the master to provide the servant a reasonably safe place in which to work, but this rule does not apply where the work the servant is performing makes the place of his work dangerous.

MAY & MAY for appellant.

H. S. HOWES and FOGG & KIRK for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Grant Stratton, was a coal miner of sixteen years' experience in working in mines, and performing the different duties of a coal miner. On the 22d day of May, 1911, while engaged in working in the mines of the appellee, Northeast Coal Co., at Auxier, Ky., and in the employment of the appellee, a large piece of slate fell from the roof of the mine upon appellant, crushing him down to the floor, and so injuring him that he has become permanently unable to perform any kind of manual labor, and is obliged to use crutches to enable him to walk at all times, in addition to long continued and severe suffering, which he endured, following the injury.

He filed his petition against the appellee in the Floyd Circuit Court, in which he alleged in substance, that while working as a servant of the appellee, under directions and instructions given by the foreman of the appellee, who was in charge of its mines at Auxier, he incurred the injury above mentioned; that the appellee permitted the mines and the roof thereof to become unsafe and dangerous, and by its gross negligence and

carelessness, permitted it to become in a dangerous condition, and that by reason of the negligence and carelessness, the slate fell from the roof upon him; that he could not by the exercise of ordinary care have discovered the defective and dangerous condition of the roof, but that appellee failed and neglected to keep the roof in repair, and that while he was engaged in working the slate fell upon him from the roof, without any warning.

The appellee filed a written motion, asking that the appellant be required to amend his petition, so as to make it more definite and certain, by stating at what point and place in the mine where he was, whether in a room, entry, or air course, when he received the injury. This does not seem ever to have been considered or passed upon by the court, but the appellant then filed an amended petition, in which he alleged that at the time the injury was incurred, he was working as an employe of the appellee, and loading coal, and that his place of work was in the third left entry, in the second room thereof, of the appellee's mine at Auxier; and that at the time he was injured he was removing coal from the fifth cut of a five-foot electric machine; that the appellee failed and neglected to furnish him a reasonably safe place in which to do the work for which he was employed, and that he received his injury by reason of its negligence and carelessness in failing to provide him a safe place in which to work. He further alleged that it was the duty of the appellee to furnish a mine boss and foreman to inspect the mines and keep them in repair and in a reasonably safe condition for its employes to work; that its mine foreman and boss in charge of the work was incompetent, negligent, and careless, and failed and neglected to properly inspect the mines, and that by reason of the foreman's negligence and carelessness, the roof was permitted to become dangerous and unsafe, and not protected by props and braces, and that by reason thereof, the plaintiff was injured, as alleged in the original and amended petitions; and that the appellee by the exercise of ordinary care could have discovered the defective condition of the mine roof. By another amended petition, the appellant corrected his first amendment, by alleging, that at the time he was injured, he was working in the neck of the third left entry, to the second room thereof, of the appellee's mine at Auxier. The appellee, by answer, traversed all of the affirmative allegations of the petition and amended peti-

tions, and by the third and fourth paragraphs, it plead contributory negligence on the part of the appellant, and that the injury which appellant received was incidental to the work in which he was engaged, and for that reason the appellee was not liable in damages for the injury; that such work is attended with danger of the miner being struck by falling slate and receiving injuries from it; and that it was the duty of the appellant to keep the roof of the room in which he was working, supported by posts, so as to prevent it from falling, or to cease working in it until it could be propped or secured.

By a reply the appellant traversed the affirmative allegations of the answer, and in addition alleged that it was the duty of the appellee to keep the roof of the mine supported, so as to prevent it from falling and causing injury to the workmen. This was denied by a rejoinder.

Upon these issues the case went to trial before the court and a jury, and at the conclusion of the evidence offered by appellant in chief, the appellee requested the court to direct the jury to find a verdict for it. This motion the court overruled, and appellee excepted to the ruling. After the conclusion of all the evidence in the case, the appellee again moved the court to instruct the jury peremptorily to find a verdict for it. The court sustained this motion, and under its instruction so to do, the jury returned a verdict for the appellee. The appellant excepted to the judgment of the court sustaining the motion for the direct verdict, and thereafter filed grounds and moved the court to set aside the verdict of the jury and the judgment of the court, and to grant him a new trial, which motion the court overruled, and the appellant having saved proper exceptions, now appeals to this court.

The grounds for a new trial are eight in number, but the first, second, fourth, fifth, and eighth embrace and relate to the same question, as to whether or not the court was in error in directing the jury peremptorily to find a verdict for the appellee. By the third ground the appellant complains that the court erred in refusing to permit the appellant to recall witnesses for further examination, after the close of all of the testimony; and by the sixth and seventh grounds, he complains, that the court erred in admitting incompetent evidence over his objection, and in excluding competent and relevant

evidence offered by him, and to which rulings of the court he excepted at the time.

It seems that the chief question for determination by this court is: Whether the trial court erred in sustaining appellee's motion for a direct verdict, and directing the jury peremptorily to find a verdict for it. The record fails to show that the appellant, after the conclusion of the evidence, offered to recall any witnesses or was prevented by the court from so doing. No errors appear in excluding testimony offered by appellant.

The appellant testified that he had been engaged in the occupation of a miner for sixteen years almost continuously, and had oftentimes engaged in the same kind of work in which he was engaged at the time he received the injury complained of. He and one Hobson, who was his assistant, were engaged in blasting down and loading the coal on cars in a room neck leading off from the entry of the mine. The room neck was about fifteen feet in width. Another crew of men who operated a machine for the purpose, would cut under the coal to the depth of five feet, and to the width of fifteen feet. Appellant bored holes in the top of the coal and made blasts, which would cause a portion of the coal to fall and separate itself from the mass, so that it could be taken up and put into the car. Where the cutting machine had cut under the coal to the depth of five feet, and for a width of fifteen feet, it was called, in the parlance of the mine, "a cut." Two such "cuts" had been made toward making this room neck, and the coal had been removed, at the time appellant began to work. This made the room neck about ten feet deep at the time he commenced to work. Three other "cuts" had been made since he commenced to work, and he was removing the coal from over the last "cut" at the time he received his injury. The room neck, at the time he received his injury, had been opened back from the entry from twenty-two to twenty-five feet; and fifteen feet wide. The appellant had worked there the preceding week by himself, and on Monday, Hobson was assisting him. About eight o'clock in the morning, the blasts were made in the coal to knock it down, and they had continued to work in removing the coal until about four o'clock in the afternoon. A large piece of coal stuck out on the face of the coal at the back end of the neck, and extended from the ceiling down toward the floor. Appellant took up his pick, which was lying upon the right hand side of the

neck, about eight feet from the face of the coal, at the back of the neck, and walked diagonally across the neck to the large piece of coal, which projected from the face of the coal at the back of the neck, and as he walked across, he struck the ceiling with his pick two or three times, for the purpose of testing it to determine if there was any loose slate over head. He did not detect anything that indicated there was any loose slate over head from sounding it with his pick, neither did he see anything which indicated it. He then commenced to strike under the large block of coal several hard blows, endeavoring to knock it down, when, without warning, a large piece of slate about nine feet in length and from three to five feet in width, fell upon him and crushed him down to the floor, and remained upon him until his assistant procured the help of other miners nearby, and removed it from him. He was not able to arise when the slate was removed from his body, and had never been able to walk since that time without the aid of crutches. One hip joint was fractured, and the pubic bone in his body broken, and lapped together about one-half inch. He suffered intensely several months from the pain which followed his injury. The piece of slate which fell, broke off immediately against the large piece of coal, at which he was working when the slate fell, and extended diagonally from that point to the left side of the neck. Appellant and some witnesses denominated it a "horse back," which is a piece of slate, flat underneath and thick in the middle, and running out to a thin edge upon each side, and when it falls from the roof, as a rule, does so without warning, and sometimes the test with the pick will not indicate a "horse back" in the roof, though usually such test will determine it. The test with the pick was the ordinary and customary way of determining whether the roof of a room neck was sound and safe. The appellant further stated that it was not customary to prop the roof in a room neck, until the coal was taken out upon the sides and the room widened, and that he had never worked, in his experience, in any mine where the roof to the neck of the room was secured by props. He further stated, that on Friday evening before his injury on Monday, he requested the foreman of the mine to furnish him with some props, or stated to the foreman that he wanted some props, and that the foreman answered, that it was not necessary to have any props, until the coals upon the sides of the

room were removed, and the room widened. He further-more stated that the foreman was at his place of work, and on the inside of it on Friday, and that on Saturday or Monday, he did not remember which, the foreman stopped at the entrance into the room neck where he was working, and asked him as to the conditions of the roof, and that he answered, that it was all right.

Some other witnesses testified for the appellant, that they had worked in that mine, and that the foreman, at times, would not visit the place where they worked more than once in a week or longer, and at other times he was at their places of work every day, or more than once a day. The appellant furthermore stated that in work-ing in a room neck, that it was his duty to examine the roof, and that if there was any loose slate, he would remove it, if he could, and if it was such that he could not remove it, that he would notify the foreman and re-main out of the neck until the danger was removed, and that if he was unable to take the slate down, there would be no danger in its falling.

The evidence introduced in regard to the request made of the foreman for props by the appellant, was ob-jected to, but the court overruled the objection.

The uncontradicted evidence offered by the appellee, shows that the mine foreman had had more than twenty years' experience in the active duties of a miner, and as foreman of a mine, and that he had a certificate from the Board of Examiners connected with the office of the Chief Mine Inspector of the state, authorizing him to perform the duties of a mine foreman; that he was a good practical miner, and just a few moments before the appellant received the injury complained of, he was at the place where he was working, and called to him, and asked about the conditions of the roof of the mine.

It is very evident that the work which appellant was performing was of such character that it was perfectly safe when he began to perform the work, but the dan-gers from it increased necessarily as the work pro-gressed. When he commenced to work, there could be no danger from the falling of the slate, because the slate could not fall until the coal should have been removed from beneath it; then the pressure from over head would necessarily be great upon it, and tend to cause it to break and to fall. After the appellant removed an addi-tional cut of coal, new dangers arose which did not there-tofore exist. The cut which appellant had bored into

and blasted down, on the morning of the day upon which he was injured, was the one which supported the piece of slate which fell upon him, because the evidence shows that it broke off directly against the face of the coal, and extended diagonally toward the left side of the room neck.

It does not appear that any inspection which the mine foreman could have made would have discovered the likelihood, of the falling of this piece of slate, and it would be unreasonable to expect or require, that the mine foreman should come to each place, where a miner is at work, and inspect the roof each time a "cut" of coal was blown down, or while it was being taken down, as that would substantially require his presence in the same room a great part of his time. Every time the appellant took out a block of coal it subjected him to the probabilities of a new danger. The appellant being an experienced miner, knew and was well acquainted with all the dangers which were incident to his work. With reference to the probabilities of the falling of the slate, the information of the appellant was equal to that of the mine foreman. The mine foreman, if it was his duty to do so, could not inspect the roof, where the last "cut" blown down by the appellant supported it, until the "cut" was removed. It had been blown down on that day. The proof shows, that according to the custom of the miners, it was appellant's duty to inspect the roof as the work progressed, and if the slate was loose he must take it down, if he could do so with safety, and if he could not do so, he must notify the mine foreman, and remain out of the room until the room was made safe, and was to be guided by his own judgment, as to whether the roof was safe or unsafe, or as to whether he should continue to work under it. The appellant was the one present while the coal was being removed, and had the greatest opportunity to know the conditions of the roof. In Ashland Coal & Iron Co. v. Wallace, 101 Ky., 637, this court said: "It is the duty of the mine owner to exercise ordinary care to provide a reasonably safe place in which his employe may perform his work, and he must use diligence to keep the place in a reasonably safe condition, so that the servant may not be exposed to unnecessary risk, and this diligence must be commensurate with the character of the service required, and with the dangers that a reasonably prudent man would

apprehend under circumstances of each particular case.''

In 26 Cyc., 1252, in discussing the relative duties owed by the master and servant to each other, it says: ''Where, however, it is the servant's duty, by the terms of his employment, or by reason of the nature of the work, to inspect, or keep in order the machinery, appliances, and places for work, he cannot recover for injuries caused by defects, which he might have known and remedied upon proper inspection.''

In 26 Cyc., 1117, discussing the doctrine applicable to the relative duties of master and servant, it says: ''Where a servant is employed in a mine, quarry, tunnel, pit, trench, or other excavation, the master owes him the duty to use ordinary and reasonable care and diligence to make his place of work as reasonably safe, as the nature of the work admits of, and must comply with all the statutory requirements which have been enacted for the protection of the servant. Where, however, it is the duty of the workman to shore up, or otherwise make safe the place of work, as the work progresses, the master's duty is fulfilled, when he furnishes them with suitable materials for the purpose; nor does the general rule apply to the place which is constantly changing by reason of the work.''

While in the petition the appellant relies upon general allegations of negligence on the part of the appellee as being the cause of his injuries, by his amended petition, he specifically alleges the negligence, which he proposes to rely upon. The negligence relied upon is, that the appellant did not use ordinary care to furnish him a reasonably safe place in which to work, and failed to prop the roof, and that the mine foreman was incompetent and negligent. There does not seem to be any evidence tending to show want of competency, or negligence in the performance of his duties on the part of the mine foreman. There is no evidence showing that there was anything about mining, or the mine, which the foreman did not know or understand, or that there was anything that he should have done, that he did not do, or that there was anything which he did do, which he ought not to have done.

It was held by this court in Palmer's Admrx. v. Empire Coal Co., 162 Ky., 133, that under an allegation of the failure of the defendant, itself, to prop the roof where decedent was working, and its failure to furnish

decedent a reasonably safe place to work, evidence of defendant's failure to furnish decedent sufficient props and caps to support the roof was not admissible, and for the same reason the issue should not have been submitted to the jury. In the same case it was held that a mere request of the miner to furnish props for the mine, could not be relied upon as negligence in the employer, unless the employe performed his statutory duty of first selecting and marking the props.

The Legislature undertook to fix, by statute, the duty of the mine owner and the miner, with regard to securing the roof in the rooms in which the miner works in the mines, by Section 2739-b, Kentucky Statutes, which was in force at the time of the injury complained of. It provided that the mine owner should provide and furnish to the miners employed in a mine, a sufficient number of caps and props to be used by the miners in securing the roof in their rooms, and at such other working places, whereby law and custom of those usually engaged in such employment, it is the duty of the miner to keep the roof propped, after the miner has selected and marked the props. There is no complaint in the case at bar, that props and caps were not on hand, and no pretense is made that appellant ever marked any props or caps to be delivered in his room, and neither does he pretend that he would have used them in the place where he was working, if he should have been furnished with them.

There is nothing in the evidence to indicate that the place of work where the appellant was assigned to work, was not reasonably safe, taking into consideration the nature and character of his work. The place only became dangerous as the appellant made it so in the progress of his work.

There is no proof to indicate, that, even if it was the duty of the mine foreman, to inspect the room neck each time a "cut" should be blown down, that he would have been able to have discovered any defect in the roof which could have been considered dangerous. It was the duty of the appellant to inspect the roof and use ordinary care for his own safety, while working there. It seems that there were only two ways of making the roof of the place safe, and one was by removing all of the loose slate, which it was the duty of the appellant to do. The other way was to put props under it, and for this purpose, it was appellant's duty to select

and mark the props, and request their delivery at the place, which he did not do. As stated above, he does not base his cause of action upon the failure of the appellee to furnish him props and caps to support the roof, after having marked and selected them. He does not allege in his pleadings, nor state in his evidence, that there was any promise to him to repair, nor was there any assurance made to him of the safety of the place, upon which he could rely in prosecuting his work.

The cases of Jellico Coal Co. v. Helton, 157 Ky., 610, and Williams Coal Co. v. Cooper, 138 Ky., 287, relied upon for appellant, are not cases in point. An examination of them will show that the facts in those cases were quite dissimilar to the facts in this case. In those cases the injured parties were persons operating cutting machines, who owed no duty to either inspect the roof, or to make it safe and had a right to rely upon the employer making the roof safe. There was, also, evidence showing that the defects in the roof would have been discovered, if ordinary care had been used in the inspection.

The case of one who owes no duty of inspection for himself, and no duty in the way of making his working place secure, is in a very different attitude to the case of one like the appellant. Those servants, who owe no duty of inspection, and no duty of making the place of their work safe, have a right to assume that the employer has performed that duty for them. The one who works in a dangerous place, under an assurance from the employer that it is safe, may likewise rely upon the assurance, and not be guilty of any contributory negligence, unless the danger is immediately obvious. A cause of action does not arise in favor of the employe because he is in the service of the employer, and sustains an injury. It is a well settled principle, that one cannot recover damages unless the negligence relied upon for the recovery was the proximate cause of the injury. Hurt v. L. & N. R. R. Co., 106 Ky., 563; L. & N. R. R. Co. v. Greenwell's Admr., 144 Ky., 707; Goins v. North Jellico Coal Co., 140 Ky., 323.

There is no evidence in the case to show that the appellee or its superior servants either knew, or with the exercise of ordinary care, could have known of the defect in the roof, which caused the injury to appellant.

When the facts in a case are admitted, or established by undisputed testimony, it is the duty of the court to

declare the law applicable to them, and where there is but one legitimate conclusion which one can arrive at from the facts, the court should determine the question. Ashland Coal & Iron Ry. Co. v. Wallace, 101 Ky., 626. In L. & N. R. R. Co. v. Greenwell's Admrx., 144 Ky., 707, this court declared the rule as follows:

"Before the injured servant can recover damages from his master, he must show that his injury was caused by some negligence of the master, or some other servant of the master which was imputed to him. It is not enough to show merely that the plaintiff sustained his injury while in the service of the master."

It is therefore ordered that the judgment appealed from be affirmed.