## Elk Horn Mining Corporation v. Vanhoose.

(Decided February 26, 1918.)

### Appeal from Floyd Circuit Court.

1. Master and Servant—Duty of Master—Mine Props.—There is no duty upon the master to place temporary timbers in a mine to protect a coal miner against dangers, arising in the progress of his work.

2. Master and Servant—Rules—Assumed Risk.—A coal miner assumes the risk of injury, due to his violation of rules requiring him to inspect the roof after each blast.

3. Master and Servant—Rules—Inspection.—Sec. 2738b, Kentucky Statutes, providing that a mining company shall furnish its employes copy of the rules upon their request, a coal miner who has not made such request is not absolved from the duty required by the rules, of inspecting the roof after each blast made by him.

4. Master and Servant—Falling Slate—Trial—Evidence—Peremptory.—In an action by a coal miner for injuries sustained by slate falling from roof of mine after he had made a blast, the evidence showing that the slate, in part, fell from the roof he had exposed in the progress of his work and that he had violated the rule requiring him to inspect the roof after each blast, it was error to overrule defendant's motion for a directed verdict.

ALLIE W. YOUNG, ED. C. O'REAR and, SMITH & COMBS for appellant.

MAY & MAY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

P. A. Vanhoose recovered a judgment for $750.00 against the Elk Horn Mining Corporation for injuries received while employed as a loader in one of the mines of the company in Floyd county; and the company appeals.

The negligence alleged in the petition is that defendant permitted its mine roof, in the entry where plaintiff was at work, to become unsafe and dangerous; and that it was the duty of defendant to have properly propped, capped and braced the roof at that place but, although requested so to do, defendant did not prop, or use ordinary care to prop, the roof to prevent the injury to plaintiff. Defendant denied the allegations of the petition and pleaded assumed risk and contributory negligence; the plaintiff, by reply, traversed these affirmative defenses.

At the time of his injury, on September 29, 1914, plaintiff had had eight years' experience as a mine loader and had been working at the place of the accident six days. Other employes had made, with an electric machine, a cut across the face of the coal up next to the roof five and a quarter inches wide and about five feet deep; and plaintiff, working alone, had bored holes downward into the face and shot the coal up to loosen it, and had loaded out about nine cars of coal when, about three o'clock in the afternoon while he was loading another car, a piece of slate some eight feet long, six feet wide, and two and one-half inches thick, fell upon him, partially from the roof he had exposed, and injured him.

At about eight o'clock that morning and before plaintiff shot the coal, the mine foreman, W. W. Perkins, on his round of inspection, came to where plaintiff was at work and plaintiff requested him to examine the roof to see if it was safe and, if not safe, to have it timbered. Perkins then, in the presence of plaintiff, tested with a pick, in the customary manner, the roof that was then exposed, and left without saying anything to plaintiff. Shortly thereafter he sent Borders, the timber foreman, to the place with instructions to erect additional timbers, such as the company was erecting permanently, every four feet as the work progressed, if this could be done so as to leave space for setting the cutting machines for the next cut. Borders measured the space between the face of the coal and the timbers already erected, but did not set any additional timbers because there was not room for them, allowing the required space for the cutting machines.

Perkins testified that, when he examined the roof, there was no evidence that it was unsafe at that time; and plaintiff, in a way, corroborated him, although he would not say whether or not the roof was then safe, but said only that he did not consider it unsafe and that he would not have gone to work there, if he had thought it to be unsafe; that he did not pay any particular attention to the test made by the foreman, but relied entirely upon the foreman to warn him if it was unsafe; and that it was not his duty to examine or to judge of the safety of the place. He did not, however, say that it was not then safe, and he admitted that thereafter he fired the shots in the face of the coal under the roof

to loosen the coal; and, without any examination whatever by himself or any one to ascertain the condition of the roof resulting from the shots he fired, or as the work progressed, he worked under the roof until he was hurt, some six or seven hours later. Nor does he claim it was the duty of any one to have examined the roof after he fired the shots under it, but rests his case entirely upon the alleged negligence of the company in failing, after the inspection by the foreman, to have placed additional props under the roof, regardless of whether such props would have left room for the machines of the cutters who were to follow him.

His position seems to us untenable for several reasons: First, because there is no proof whatever that, when the foreman inspected the roof and before plaintiff fired the shots, the roof was unsafe and needed additional support for plaintiff's protection; nor can such unsafe condition be inferred, as argued by counsel for plaintiff, from the action of the foreman in sending Borders in to place such permanent timbers as the company was erecting in the entry as could be placed, since it is perfectly apparent it was only such permanent timbers as could be erected that the foreman instructed Borders to erect and not temporary timbers for the protection of plaintiff. So, there is no inference, as there is no evidence, that temporary timbers, such as counsel for plaintiff argue could and should have been erected, were needed, to make the place safe for plaintiff; and even if such an inference was warranted from the circumstances, plaintiff himself would have been bound thereby because he knew of every circumstance connected therewith, yet he would have us, from these circumstances, infer that the roof was unsafe and the company negligent in failing to prop it, and allow him to construe the same circumstances as a tacit assurance that the roof was safe and did not need propping. Second, the law places upon the master no duty to provide against dangers arising in the progress of an employe's work and resulting therefrom; and the only reasonable inference from the proof here is that the unsafe condition, which resulted in plaintiff's injury, developed in the progress and as a result of plaintiff's work, of which he alone knew or had the opportunity to know. Third, it is made the duty of the mine foreman, by statute, to visit all working places in the mine at least twice a week, and manifestly it would

be impossible for him to watch the progress of each employe's work for dangers that might develop in the progress of the work, and consequently no such duty was upon him; and the evidence shows there was no one else chargeable with such an inspection but the employe, plaintiff himself, which is shown by the rules adopted, approved, and posted by the company pursuant to section 2738b, Kentucky Statutes, by rule 7 of which it was made plaintiff's duty to inspect the roof after each blast and as the work progressed, and to cease working, leave the place, and report to the foreman or his assistant whenever the roof became unsafe; and this, plaintiff confessed he did not do, and he, therefore, assumed the risk and can not recover.

Plaintiff seeks to avoid the duty of inspection imposed upon him by the rules by the fact that he had not been furnished a copy of same. The statute provides that when the rules are adopted, approved and posted as therein required, which the evidence shows was done here, the employe is deemed to have notice of and to have agreed to same; and it is further provided that he shall be furnished a copy by the company when requested by him, but plaintiff does not even claim to have made such a request.

Plaintiff also claims exemption from the rules, because the defendant was doing all the propping required in this mine; but the rules show this was to be done by the company, except permanent timbering, only when, in the progress of such work as plaintiff was doing, he discovered and notified the company of the necessity therefor.

It is, therefore, apparent that the trial court erred in overruling the defendant's motion for a directed verdict.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent herewith.