## Quinn v. O'Bryan.

(Decided March 26, 1926.)

### Appeal from Daviess Circuit Court.

1. Master and Servant—Experienced Miner Held Without Remedy, as Matter of Law, for Injuries from Fall of Slate and Rock from Roof of Mine, when Supporting Pillar, from which he was Removing Coal, Gave Way.—Experienced coal miner, injured by fall of slate and rock when pillar supporting roof gave way while he was removing coal from it without mine owner's consent, held without legal remedy, as matter of law, against owner, who was not shown to have neglected any duty to miner; absence of properly certified mine foreman not having contributed to injury, which did not occur at miner's regular working place at face of coal, and there being no evidence that he had asked for or needed props in room where he was working at time of injury.

2. Negligence.—Where there is no violation of duty, there can be no actionable negligence.

T. F. BIRKHEAD and BIRKHEAD & CARY for appellant.

LOUIS I. IGLEHEART and E. B. ANDERSON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellee, O'Bryan, operated a small coal mine in Daviess county in which appellant, Quinn, was employed at the time some slate and coal fell upon him and caused the injury which is the basis if this action for damages. At the conclusion of the evidence for the plaintiff the trial court sustained the motion of O'Bryan for a directed verdict in his favor and Quinn appeals.

The negligence relied upon was the failure of the mine owner to have a foreman and inspector in charge of the mine to see that the working place of appellant was reasonably safe, and the failure of the mine operator to have props of the right length supplied to the room of appellant, so that he might support the roof and make it reasonably safe from slate falls. It was a drift mine, the coal being about four feet thick. Appellant Quinn was an experienced coal miner, having worked at the business for about six years in this and other mines. He had been driving a room alone, but the water accumulated in it and he asked appellee if it would be all right for him to go into a room across the entry and work with another

miner. Appellee consented to this and appellant, Quinn, began to work in the room with a fellow miner. This room had been driven a considerable distance and was some twenty or more feet wide. In mining, appellant and his buddie bored holes several feet horizontally into the face of the coal, loaded them with powder, and fired them so as to bring down the coal. That they might avoid the smoke incident to the firing of the shots, the miners would put off their shots immediately before leaving in the evening so that the smoke would clear away by working hours next morning. Appellant began working with his buddie on Monday morning and worked until Tuesday evening when the two men together drilled holes into the face of the coal, loaded them with powder and made them ready to shoot. Previous to that time appellant's buddie had drilled a deep hole into the pillar or stump near the room neck, some distance from the face of the coal, with intention of shooting off a part of the coal constituting the stump or pillar, and on that evening suggested to appellant that they then load the hole with powder and shoot it at the same time as the other holes, and thus get from the pillar some easy coal, it being a well known fact among coal miners that coal is more easily and faster mined from a pillar or stump than from the face or main body of coal. Following this suggestion appellant and his buddie did load the hole in the stump with powder and fuse and fired it at the same time they fired other shots, placed in the face of the coal. On their return Wednesday morning about seven o'clock they began to clean up the coal thus shot down. They first loaded the coal which resulted from the four shots in the face of the coal and it was carried out in small cars. They then went to the pillar and began to work. That shot had split the pillar, moving a portion of it several inches away from the main body of the pillar, and loosened it up so that appellant and his buddie thought it would be easy to get several tons of coal. After loading the loose coal appellant's buddie knelt down near a corner of the pillar which had been loosened and began with his pick to undermine it. After working at it a few moments, appellant asked him to get up and let appellant mine; appellant took a position at the same place on his knees and about the time he made the twelfth stroke the coal in this stump gave away and let down some slate and rock from the roof which fell upon him, severely and permanently injuring him in his spine and back, causing partial paralysis. It is for

this injury that appellant, Quinn, sued to recover dam-
ages.

The pillar or stump from which appellant and his
buddie were attempting to take coal was intended to sup-
port the roof of the mine, and to make it safe for work-
men while they removed coal from the room in the regu-
lar way, and this was known to appellant and all experi-
enced coal miners, and appellant had no right to take coal
from the pillar at that time or at any time until the oper-
ator decided to "rob" the mine, which is done when all
the coal is regularly mined out except the stumps and pil-
lars. The "robbing" simply consists in taking out these
pillar supports and letting the mine fall in.    Every coal
miner of even slight experience knows that the pillars are
necessary and intended to support the roof and that
to remove them makes the mine dangerous, and in
fact the "robbing" of the mine—the drawing or removing
of the pillars—is very hazardous work, and is so re-
graded by all experienced coal miners, although it is very
profitable because the coal owing to the great weight
resting on it is quite easily and rapidly obtained.    It
is, therefore, clear that appellant was not working at
his regular place, but was working at a place at
which he had no right to work, and was engaged in do-
ing something which he was not employed to do and which
was detrimental to the mine and against the interest of
the master. Furthermore, he was taking the support from
under the roof and making his working place dangerous.
In fact, he took the support from under the slate or rock
which fell upon him—a most natural consequence. As an
experienced miner he must have known and is charged
with knowing that he had no right without the consent of
the mine owner to mine or remove the coal from the pil-
lars; and, further, that to so mine and remove the coal
made his working place dangerous and was calcluated to
cause the mine to cave in. There is some evidence tending
to show that there was no mine foreman, having the
proper certificate of qualifications, but this in no wise
contributed to the injury of appellant, for he was
not engaged at his regular working place at the time of
his injury, and, there is also some evidence that appellant
had asked for props at his original working place across
the entry, but there is no evidence to prove that he had
asked for props for the room in which he was working at
the time of his injury, nor is there any evidence tending
to show that he needed props in that room or that there

was any danger of the falling of the roof at the face of the coal. In fact, he did not receive his injury at the face of the coal, but some thirty to sixty feet away from his regular working place. Inasmuch as the slate fall did not occur at the face of the coal where only appellant had a right to work and mine coal, he has no right to complain of the unsafe condition of a place at which he had no right to mine coal, especially when he has dug and removed the support from under the slate which fell upon him. The court is not unmindful of the fact that appellant received a very serious injury, calculated to excite the deepest sympathy, but it has not been pointed to any duty owing by appellee, O'Bryan, the mine owner, to appellant, Quinn, which was neglected, and which in any way contributed to appellant's injury, and there can be no actionable negligence where there was no violation of duty. There is not a word of evidence, so far as we are able to understand the case, which in any measure proved that appellant, Quinn, was injured as a direct result of negligence on the part of appellee, O'Bryan, or any person acting for him in the mine in a representative capacity. This being true, appellant, Quinn, was without legal remedy against O'Bryan. The trial court was not in error in directing the jury at the conclusion of the evidence for plaintiff to find and return a verdict for the defendant.

Judgment affirmed.