## High Splint Coal Co. v. Baker.

(Decided Dec. 16, 1932.)

TYE, SILER, GILLIS & SILER and T. E. MAHAN for appellant. POPE & HUFF for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The High Splint Coal Company was eligible to operate, but was not operating, under the Workmen's Compensation Law (Ky. Stats., sec. 4880 et seq.) at the time an injury was sustained by Baker, one of its employees. It was engaged in the business of mining coal. Baker was seriously and permanently injured while engaged with two other employees in driving or making the main entry in main No. 8. The place he

was injured was between the mouth of the entry and a break-through, about 2 feet to the right of the steel rail on which the coal cars were loaded, and about 150 feet from the face of the coal. It was the duty of himself and companions to load the coal as it was cut with the machine, and where there was draw slate over the channel from which the coal had been cut, it was their duty to bore holes, insert dynamite or powder, and shoot it. He and his colaborers were instructed to go to the point at which he was injured and "take the slate down." On arriving at the place, they observed the word "begin" written with chalk, and about 15 or 20 feet from it, the word "stop" was also written, which indicated where they were to begin and end the shooting the slate. Where they were to shoot down the slate was something like the middle of the break-through, extending over the center of the entry. They bored two holes "going up" to a depth of about 5 feet, and two "coming down," or four holes in all. In them was inserted either powder or dynamite and tamped and a fuse lighted, when Baker and his fellow workman retired for some distance and awaited the firing of the blast and the disappearance of the smoke resulting therefrom. Within thirty or forty minutes they returned. Baker, on returning to where the shots were fired, with the use of a pick, examined the place where he was to work to see if anything was loose, or hanging over him. He did not find anything that he believed was dangerous or liable to fall. The portion examined by him sounded solid. He and one of his companions began to load a car with slate; the other, with a slate bar, began to pull down loose slate, and by the time the car was practically loaded, the loose slate was taken down by him. Baker was between the car track and the wall of the mine, about 2 feet out in the entry, when a block about 10 or 12 feet long fell and injured him. About 6 feet of the block that fell upon him, before it fell, was within the space that he and his companions had shot for the purpose of removing the overhead slate. The remaining 4 feet extended beyond the space where the shots were fired, toward the drift mouth. He was 46 years of age and had been engaged regularly in mining since he was 15 years of age, and was an experienced, competent, practical miner, having worked in every branch of mining. He had worked for the appellant about one year before his injury, two months of

which were in this entry. The coal, at the place where the shots were made and where Baker was injured, had been removed several months before he was injured. It is conceded that Baker and his colaborers were only ordered by the mine foreman to take the slate down from the top of the entry where the holes were bored and the shots were fired. This character of work was and had been his work for several months, and in which he had had years of experience. He and his two companions helped each other in the performance of their work, and no one of them was boss as between themselves, and no other employee of the company was present. The roof of the entry, up to the point where the word "begin" was written, had been made by the removal of draw slate. The slate they were removing was loose, dangerous, and unsafe to pass under with the motor and trips. It had been exposed to the air and was liable to fall, all of which was known to Baker. It was his duty after the shots were fired to examine carefully the roof of the entry where the shots were fired after the slate had been shot. Also it was his duty to examine that portion which fell upon him and to determine whether it was safe for him to work without its removal, and, if so, remove it. He says that he carefully examined it. He was asked and answered these questions:

"Q. You had had many years experience sounding slate to tell whether it was going to fall? A. I have had experience.

"Q. You know nothing anyone else could have seen or discovered there that you didn't discover? A. I don't know what the other fellow could have seen, I done all I knew to do."
He was asked these questions:

"Could the accident or injury have been prevented, if so, how? A. If I had known how to prevent the accident at the time it occurred, I would have prevented it.

"Q. What could and should the company have done to prevent such injury? A. Nothing I know of. If there was anything I would have told them.

"Q. About all the purpose in shooting down the slate you were shooting down was to get this

dangerous slate out of the way so that it would not fall on the people, is that right? A. Where we were shooting it was. * * *

"Q. In other words you were engaged in the work of making a dangerous place safe. A. Yes.

"Q. In the prosecution of this work which you were required to do, state to the jury if the removal of all slate was paid for extra in addition to the coal? A. It was."

No evidence was offered on the main issue other than the testimony of Baker. The facts not being disputed, the question becomes one of law. Consolidation Coal Company v. Ratliff, 217 Ky. 103, 288 S. W. 1057; Warfield Natural Gas Co. v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543. The appellant having elected not to operate under the Workmen's Compensation Act, the express provisions of section 4960, Ky. Stats., preclude it from relying on contributory negligence, or assumed risk on the part of Baker, or the negligence of a fellow servant. Gibraltar Coal Mining Co. v. Collins, 237 Ky. 765, 36 S. W. (2d) 372; Gibralter Coal Mining Co. v. Nalley, 214 Ky. 431, 283 S. W. 416; DeBoe's Adm'r v. West Ky. Coal Company, 216 Ky. 198, 287 S. W. 568; Worsham Brothers v. Worley, 220 Ky. 682, 295 S. W. 981; Horse Creek Mining Co. v. Frazier's Adm'x, 224 Ky. 211, 5 S. W. (2d) 1064; High Splint Coal Co. v. Payne, 243 Ky. 677, 49 S. W. (2d) 539.

Notwithstanding the statutes preclude the company from relying on these defenses, the burden was on Baker to establish at least a prima facie case of negligence of the company to entitle him to have the issue submitted to the jury. Certain facts are admitted by him, i. e.: (a) That a portion of the slab of slate which fell and injured him, fell from the roof he and his colaborers had exposed in the progress of their work; (b) that it was his and their duty to inspect, examine, and discover for themselves the presence of slate or other substance which was liable to fall and injure him or them; (c) that he examined some portion of the block which fell and injured him by sounding it with a pick and failed to discover its condition; (d) that he and his companions relied on no superior or other servant of the company to make the place where he was injured a safe place for him and them to work; (e) he

knew of no other method by which the company or any one for it, other than he and his fellow workmen, could have resorted to or used to discover the dangerous condition of the block which fell upon him, and thereby prevented it from falling and injuring him; (f) the company was under no duty to furnish him and his companions, either before or after the shots were fired, an inspection or examination to discover the safe or unsafe condition of the slab which fell and injured him.

These deductions are fairly deducible from his testimony and utterly fail to establish any sort or degree of negligence on the part of the company.

It is an undisputed rule that an employee cannot recover for personal injury alleged to have resulted from the negligence of the employer unless he establishes a duty on the part of the employer and a breach thereof as the proximate cause of his injury. In other words, it must be shown that the employer, or some other servant or employee whose negligence can be imputed to the employer, violated a duty owing to the injured employee; otherwise there is no actionable negligence. Quinn v. O'Brwan, 213 Ky. 776, 281 S. W. 1020; Stratton v. N. E. Coal Company, 164 Ky. 299, 175 S. W. 332. The rule requiring the master to furnish his servant a reasonably safe place to work, considering the nature and character of the work he is required to do, does not apply where the servant is performing work to make a dangerous place safe, or where the work makes the place obviously dangerous. Ballard & Ballard Co. v. Lee's Adm'r, 131 Ky. 412, 115 S. W. 732; Hazard Coal Co. v. Wallace, 181 Ky. 636, 205 S. W. 692; Smith's Adm'r v. North Jellico Coal Co., 131 Ky. 196, 114 S. W. 785, 28, L. R. A. (N. S.) 1266; Duvin Coal Co. v. Fike, 238 Ky. 376, 38 S. W. (2d) 201, and cases cited. The duty of the master to furnish his servant with a reasonably safe place to work depends upon the facts in each particular case. Gatliff Coal Co. v. Wright, 157 Ky. 682, 163 S. W. 1110; Duvin Coal Co. v. Fike, supra, and cases cited.

In Gregg v. Stonega Coal & Coke Co., 177 Ky. 718, 198 S. W. 5, the servant at the time of his injury was creating the peril which injured him, was himself charged with the duty of taking down slate for his own protection.

In Lyttle v. Rex Coal Co., 177 Ky. 660, 197 S. W. 1070, a servant was charged with the duty of taking down slate in his own working place at the time of his injury.

In Elk Horn Mining Corporation v. Vahoose, 179 Ky. 529, 200 S. W. 921, 15 A. L. R. 1378, the entry where the servant was at work became unsafe and dangerous. The servant did not consider it unsafe, although the foreman had informed him it was unsafe and thereafter he fired the shots on the face of the coal under the roof to loosen it and began to load coal, and as the work progressed he was injured.

In Charles v. Elkhorn Mining Co., 179 Ky. 288, 200 S. W. 461, the plaintiff was engaged in repairing the roof of the mine and placed props therein to make the same safe, when a large solid rock fell and injured him.

In New Hughes Jellico Coal Co. v. Gray, 173 Ky. 337, 191 S. W. 78, the miner was injured by the dangerous condition created by extracting coal in the progress of his work, at a place where the owner owed him no duty to prop or timber.

In Stonega Coal & Coke Co. v. Clark, 205 Ky. 745, 269 S. W. 1021, the uncontradicted proof showed that the employee was injured by being struck by slate while taking it down.

In Perkins-Harlan Coal Co. v. Mercer, 235 Ky. 618, 32 S. W. (2d) 14, a miner was put to work in a room of the mine from the roof of which a loose piece of slate extended 2½ feet which the foreman directed him to take down, if possible, and if not to place timbers beneath it, and he was injured by the falling of the slate after he had placed timbers under it and had proceeded to take out coal from the adjacent parts.

In each of the foregoing cases it was held that the doctrine of safe place to work did not apply.

Notwithstanding the master elects not to work under the Workmen's Compensation Act, the rule is that if the negligence of the employee is the sole cause of his injury, a recovery of the master therefor cannot be sustained. Gatliff Coal Co. v. Summer, 196 Ky. 592, 245 S. W. 144; DeBoe's Adm'r v. W. Ky. Coal Co., supra; Horse Creek Mining Co. v. Frazier's Adm'x, supra; Duvin Coal Co. v. Fike, supra; Gosney v. L. &

N. R. R. Co., 169 Ky. 323, 183 S. W. 538, L. R. A. 1916E, 458; Watson's Adm'r v. C. & O. R. R. Co., 170 Ky. 254, 185 S. W. 852; Stull's Adm'x v. Ky. T. & T. Company, 172 Ky. 650, 189 S. W. 721. The principles we have stated are fundamental, and are disputed by no text-writer or court.

"Our cases are numerous to the effect that where the servant, and especially if he is the vice principal on the spot, himself creates the danger and renders the place unsafe, and with that knowledge continues to work at it, and sustains injuries, then and in such case he himself is the sole producer of his injuries, and which cannot in any legal sense be charged to the master without some proximate casual dereliction on his part."

The indubitable proof brings this case squarely within the established principles herein reiterated.

The judgment is reversed, with directions to set it aside, and if the evidence upon another trial is substantially the same as upon this one, the court will sustain defendant's motion for a peremptory instruction.