## Yeary's Administrator v. Hignite Coal Co.

(Decided Feb. 16, 1937.)

LOW & BRYANT, R. G. LOW and ARTHUR RHORER for appellant.

W. T. DAVIS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The administrator of the estate of Joe Yeary brought this suit against the appellee to recover damages for his death in its mine on February 7, 1934. He appeals from the judgment rendered on a directed verdict for the defendant. Inasmuch as the defendant had not elected to operate under the provisions of the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.), the sole issues were whether it was negligent and, if so, whether its negligence was the proximate cause of its employee's death.

The decedent had been working with McKinney Bailey for about six weeks shooting and loading coal in an entry which was 10 feet wide. There was a 30-inch seam of coal, then a 24-inch layer of rock or slate, and on top of that another 30-inch layer of coal. The method employed was to shoot first the bottom seam of coal, then the rock, and then the top coal. An uncle of the decedent was an assistant foreman, and on an inspection made on Monday preceding the accident on Wednesday he found a loose rock 10 or 12 inches long back over the coal being removed. The general foreman was there on Tuesday and found some loose slate on the left side where Bailey was working, and warned the men of it. Yeary was working on the right side. The men were engaged in loading coal and dirt and, when Bailey last noticed Yeary, he was between the two cars picking coal off the dirt and putting it on the coal car. Hearing the slate start, Bailey cried, "Look out, buddy," and ran. But Yeary did not escape. It had been about fifteen minutes since they had shot down the top layer of coal which they were engaged in loading. As was proper, said he, Bailey sounded his side of the roof after the shot and found some loose slate and stayed from under it. He did not know whether Yeary had sounded his side of the roof or not. The coal car was between them. The lower seam had been driven 10 or fifteen feet farther than the upper

one. The mine car extended about halfway under the upper ledge of coal. Bailey estimated that he and Yeary were 3 or 4 feet from under the edge of the coal. But the variableness of the witness' explanations and estimates make it difficult, if not impossible, to understand just where the men were in relation to the face of the coal. He does say that the men had just taken out some coal from the lower bench and some of the parting rock. They had fired explosives in the upper seam and were in the act of loading that coal and the slate that fell with it when the accident occurred. Yet he testified that the slate which fell had been exposed two days or longer. He also said that he had not seen it that morning. In conclusion, to add to the confusion of his testimony, he declared that it was not slate but coal that fell on Yeary. A more intelligent witness who was nearby stated that there was loose coal by the car which had just been shot down. There was a piece of slate, perhaps 1 foot wide and 5 or 6 feet long, that had fallen from the roof.

The statutes current at the time of the accident required that the mine foreman or an assistant should examine every working place in the mine not less than twice each week, and see that workmen were provided with sufficient and suitable props when ordered or selected by them as specified in the rules of the mine, authorized to be made by the statute. It was his duty to direct and see that the roof was properly secured by props and that no person worked in an unsafe place except for the purpose of making it safe. Section 2726-4, Kentucky Statutes, 1930 Edition. It was likewise a duty prescribed by the statute that a workman in need of props and timbers should notify the foreman or an assistant of the fact at least one day in advance unless in case of emergency requiring an immediate supply. If for any reason suitable props could not be furnished when required, the workman was obliged to vacate the place until the needed timber was supplied. Section 2726-5, Kentucky Statutes, 1930 Edition. The statutes authorized an operator to adopt rules consistent with the statutes for the government and operation of his mine and, when properly posted, the workmen were subject to them. Section 2738b-1, Kentucky Statutes, 1930 Edition. (Amended by ch. 100, sec. 53, Acts of 1934, and ch. 21, sec. 53, Special

Session Acts of 1934, now compiled as Sec. 2739-54. Ky. Statutes, 1936 Edition.)

The assistant foreman had inspected the place on Monday. He testified he found the roof to be in good condition, but a small rock was loose over the space where the bottom seam of coal had been cut. The foreman also inspected it on Tuesday and found it in the same condition, except there was some loose slate on the left side of the entry. There was none on the right side where Yeary was working. Under the rules it was a coal digger's duty to protect himself at the face after coal was taken down by setting props and timbers. It was his duty also to take out the loose rock.

There is no evidence that the defendant did not make available the props or timber required. There is nothing to indicate that the inspections revealed, or should have revealed, any dangerous condition at the point where the slate fell on Yeary. Before there can be any recovery for damages sustained through negligence of a master, some duty which he owed the injured party must have been violated. In High Splint Coal Company v. Baker, 247 Ky. 426, 57 S. W. (2d) 60, 62, and Baker v. High Splint Coal Company, 258 Ky. 786, 81 S. W. (2d) 577 (a second appeal), the applicable law is reviewed. The opinion covers the law and facts of this case quite fully. As stated in the first opinion: "The duty of the master to furnish his servant with a reasonably safe place to work depends upon the facts in each particular case." And, further, "The rule requiring the master to furnish his servant a reasonably safe place to work, considering the nature and character of the work he is required to do, does not apply where the servant is performing work to make a dangerous place safe, or where the work makes the place obviously dangerous." The law is thus expressed in Elk Horn Mining Corporation v. Vanhoose, 179 Ky. 529, 200 S. W. 921, 922, 15 A. L. R. 1378:

"The law places upon the master no duty to provide against dangers arising in the progress of an employee's work and resulting therefrom; and the only reasonable inference from the proof here is that the unsafe condition which resulted in plaintiff's injury developed in the progress and

as a result of plaintiff's work, of which he alone knew or had the opportunity to know.

"It is made the duty of the mine foreman, by statute, to visit all working places in the mine at least twice a week, and manifestly it would be impossible for him to watch the progress of each employee's work for dangers that might develop in the progress of the work, and consequently no such duty was upon him," etc.

See, also, Gibralter Mining Company v. Collins, 237 Ky. 765, 36 S. W. (2d) 372; Butts' Adm'r v. High Splint Coal Company, 263 Ky. 638, 93 S. W. (2d) 356; Southern Mining Company v. Saylor, 264 Ky. 655, 95 S. W. (2d) 236.

The facts are not in dispute. It seems to us an inescapable conclusion that the dangerous condition was caused by the removal of the coal and slate by the decedent himself and that no negligence on the part of the defendant was proved; hence that the court properly directed a verdict for it.

A map or diagram, which seems to have been prepared for the plaintiff upon information furnished by the witness Bailey, was used during the trial. It was early tendered for filing with the court's ruling reserved. Toward the end of the trial, upon cross-examination of the witness as to the correctness of the diagram, the court found it not to be approximately correct and declined to permit it to be filed. When exceptions were taken to his ruling, the court stated he would refuse to let it in if there was an objection. The defendant made no objection. The argument that an error was committed in not permitting the diagram to be filed is not well taken, for the jury had the full benefit of it together with the evidence pertaining to its correctness—if, indeed, it cannot be regarded as having been actually filed of record.

Judgment affirmed.