## Southern Mining Co. v. Lawson.

June 13, 1939.

James M. Gilbert, Judge.

H. C. Gillis and Logan E. Patterson for appellant.

Golden & Lay for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is from a judgment for $12,650 for personal injuries sustained by the appellee, Sherman Lawson, while working in the mine of the appellant, South-

ern Mining Company. Lawson, experienced in such work, was engaged in robbing the mine when injured. His cause of action was pitched upon allegations of improper mining methods in certain specific respects and a failure to provide him with a safe place to work.

The pillar upon which Lawson was working had been reduced by other miners from 24 by 60 feet to about 12 by 60 feet. It appears that about one-half of this reduced pillar had been taken out by him and Riggs, the reduction being made diagonally. The main seam of coal was about 3 feet thick. On it was 1½ inches of dirt, then 6 inches of coal, then a parting of impurities, and then a 13 inch seam called "cap coal." The mine had a good rock top but the bottom was soft. The practice was to take out the main seam and clear it away before taking down the cap coal, since it was dirty. Some of the cap coal would come loose, but part of it would stick and the men would work under it. That would be wedged or shot down as the case might require. On this occasion Lawson and Riggs had taken down the biggest part of the cap coal that was hanging when the foreman was there two or three hours before Lawson was hurt. At one time Lawson stated there was only 2½ feet of cap coal then in place. They could not get it down right up close to the face by wedging and left a projection of about 18 inches. While Lawson was taking the dirt out of the cap coal which had been brought down, and was "at least 2 feet" from the face of the coal, he heard a "big noise" and the protruding cap coal "come right out on me." The block which fell on and seriously injured appellee was about 3½ by 4 feet. Some evidence indicates it was much smaller. When the foreman was there before the accident, he had warned Lawson and Riggs of the danger of the cap coal and told them to take it down before they got under it. Lawson testified that the same general conditions then existed as when he was hurt. Riggs' testimony is substantially the same. He refers to the "popping" of this lump of cap coal and others refer to it as a "bump," both of which words are used as descriptive of the expulsion of a section of coal or rock by the settling of the roof, with the illustration of a seed popping out of an orange when it is squeezed.

The condition of the mine as described was that there had been four rooms back of the place robbed down to the stump, which was at least 240 feet away.

But we understand that to the side and immediately back of the place where the man was hurt there were stumps or pillars not over 55 feet away. Of course, the removal of the coal forming the support of the mountain resulted in increasing the weight of the coal remaining in place. This was causing a crushing and popping out of coal here and there and some heaving of the floor. Riggs testified there was not much of this and that he had not observed anything unusual or extraordinary that would indicate the place was dangerous. Two men, experienced in robbing work, introduced by the plaintiff, described indications that the mine was taking weight, such as a heaving of the floor, and the crushing and popping of coal, with accompanying noise. One of the witnesses related that when the size of the rooms had been enlarged and pillars reduced by the robbing, the weight causes such conditions and causes the cap coal to pop or fall out. The weight of the mountain is too heavy to be sustained by props.

The substance and effect of the plaintiff's evidence in this particular is only a description of conditions, the happenings and the causes thereof. A reasonably safe place in which to work is, of course, a relative matter, e. g., a coal mine being robbed is obviously a much more dangerous place than a lawyer's office; and exercising ordinary care to provide a reasonably safe place calls for different and commensurate degrees of diligence. We find nothing in this record tending to show that the defendant was negligent in failing to provide a safe working place for the appellee, considering the nature of the work. This is a case where the progress of the work by the servant created the dangerous condition and he continued to work there, under a projecting section of coal, in disregard of his foreman's directions given a short while before he was hurt. This was in violation of Section 2739-36 Kentucky Statutes. If the place was unsafe within the meaning of the law of negligence, it was made so by the nature of the work being done. Indeed, the essence of the appellee's argument to sustain the judgment is that the dangerous condition resulted from pursuing improper mining methods and he recites the evidence of the conditions as proving that such was being done. But there is no evidence, factual or opinion, that the method of mining, which was producing the described conditions, was not proper or customary or approved. Though the undertaking is per se

a hazardous one, as stated in E. J. O'Brien & Company v. Shelton's Adm'r, 246 Ky. 537, 55 S. W. (2d) 352, 354:

> "If a method of performing the work was selected which enhanced its hazards, or if appellant failed to adopt a method or plan of doing the work, which was customarily and usually employed by reasonably prudent persons engaged in similar work, then it failed to perform a duty it owed to decedent, and, if by reason of its violation of this duty the accident occurred, it is liable."

It is the absence of evidence of a failure to adopt such a method that distinguishes the case from the decisions cited in support of the argument. On the other hand, the defendant's evidence showed that the operations and course of work were in every respect according to approved methods.

It is a tragic thing for a man who the force of circumstances compels to work for another in order to earn a livelihood for himself and family to have his body crushed and thereby become a suffering, practically helpless invalid the rest of his days and not receive compensation therefor. The Commonwealth of Kentucky, expressing the humane concept of the modern social order, has provided a system for such compensation to be absorbed in the cost of production even as is the damage to an inanimate machine; and to secure its recognition by all employers of three or more persons has withdrawn ancient defenses to a suit for damages. But the appellant has chosen not to conform to that law and to risk the penalties prescribed. And though in this case those defenses have not been recognized, yet the employee as plaintiff has not, in our opinion, proved prima facie the employer's negligence as the proximate cause of his injury and the resultant damage; hence has failed to establish its liability. Gatliff Coal Company v. Powers' Adm'r, 219 Ky. 839, 294 S. W. 472.

Under this state of the record, we are constrained to hold that the court erred in not peremptorily instructing the jury to return a verdict for the defendant. High Splint Coal Company v. Baker, 247 Ky. 426, 57 S. W. (2d) 60; Yeary's Adm'r v. Hignite Coal Company, 267 Ky. 265, 102 S. W. (2d) 19; Perkins-Harlan Coal Company v. Creech's Adm'r, 268 Ky. 174, 103 S. W. (2d) 943.

Judgment reversed.